217 So.2d 733 (1969)
J. Lee CALHOUN, Plaintiff-Appellee,
v.
C. H. HUFFMAN et al., Defendants-Appellants.
No. 2531.
Court of Appeal of Louisiana, Third Circuit.
January 16, 1969.
Rehearing Denied February 5, 1969.
*734 Magee & Sturgeon, by John Sturgeon, Ferriday, for defendant-appellant.
Falkenheiner & Calhoun, by W. C. Falkenheiner, Vidalia, for plaintiff-appellee.
Before FRUGE, SAVOY, and HOOD, JJ.
FRUGE, Judge.
This is a suit on a promissory note. This action was filed on September 9, 1965, by the plaintiff, J. L. Calhoun, in which he sued three defendants, Donald Stringer, Bill Gautreau, and C. H. Huffman, on a note dated February 13, 1963, in the amount of $12,725.16.
The note was made payable to the order of J. L. Calhoun and bore interest at the rate of six percent per annum payable annually from date until paid. It had the usual stipulations concerning attorney's fees and was secured by a mortgage on a business establishment known as the "Farmhouse Club". The club was owned by the defendants and was located in the Parish of Concordia.
On March 3, 1964, C. H. Huffman bought the interest of Billy Gautreau in the Farmhouse Club and specifically assumed the indebtedness represented by the promissory note and the mortgage.
At the origin of this suit, plaintiff sued for the full amount of the note, together with interest and attorney's fees. As noted above, this action was commenced on September 9, 1965.
In the answer of defendants, they alleged certain credits due them for payment on the amount of the note, and as well, gave excuse for delinquency on the note in alleged problems they were having in collecting insurance proceeds.
Of importance to this case, the evidence revealed that on January 2, 1965, the Farmhouse Club was destroyed by fire. Prior to this fire, on April 11, 1963, the plaintiff, Mr. Calhoun, had purchased from Gautreau and Stringer all of the furnishings of the business known as the "Farmhouse Club."
After the Farmhouse Club was destroyed by fire, the defendants in this case filed suit against two groups of insurance companies who had issued policies covering the Farmhouse Club and its contents. The total amount of the insurance was $27,000.00 the Lloyds group having policies in the amount of $13,500.00; $12,500.00 on the real property and $1,000.00 on the contents. The American Allied group likewise had $12,500.00 on the real property and $1,000.00 on the contents.
The plaintiff in this case intervened in the suit of defendants on September 7, 1965, and as stated above, subsequently filed this suit on September 9, 1965. The prayer of the intervention was essentially the same as the prayer in this suit, which was that the plaintiff was due the entirety of the face amount of his note, with interest, attorney's fees and costs.
Subsequent to the intervention, Lloyd's of London, one of the insurers of the Farmhouse Club, put into the registry of the court the total, $13,500.00, of their coverage. By court order rendered on October 26, 1965, prior to the trial of this case, the $13,500.00 in the registry of the court was distributed as follows:
To J. L. Calhoun and his attorney, Lloyd F. Love, $10,739.95,
To C. H. Huffman, Donald Stringer and their attorney, Roy S. Holcomb, $2,760.05.
*735 The amount owed plaintiff was allegedly arrived at through the computations of Victor Cross, a third party, who had considered various receipts and credits given to him by defendants in the computation of the principle and interest for the note. In reading the records and the briefs, this court gathers that at no time were attorney's fees considered in the computations.
As the case comes to us, the contentions of the parties are as follows:
Plaintiff claims and was awarded by the lower court, the total sum of $3,366.03, plus six percent interest from October 26, 1965 to the date of payment. This represents the amount still due on the note including interest up to and including October 26, 1965, and as well, ten percent attorney's fees. Plaintiff alleges that of the $10,739.95 that he received in the compromise agreement after his intervention in the insurance suit, $1,000.00 of that amount, he received as reimbursement of his loss of the contents of the building which burned. Therefore, in the compromise suit he actually received only $9,739.95 in payment of what was owed him on the note. Subtracting the credits that plaintiff feels are actually due and were proven by defendants, and adding a ten percent attorney's fee and accrued interest, the amount still due plaintiff on the note, less the $9,739.98 given him in judgment, equals $3,366.03.
It is defendants' position that plaintiff, in his prayer for intervention in their suit against the insurance company, alleged ownership of certain funds to be distributed on the grounds that they were owed him because of his note and mortgage, and that no part of the $10,739.95 could be applied to the loss of the contents of the building. Although the court was silent, allege the defendants, as to the reasons for the disbursements, the prayer of the petition of intervention had asked for the amount of the note, and therefore the amount should be applied on the note. As a defense against this suit, defendants plead the application of the doctrine of equitable estoppel.
The lower court gave judgment to plaintiff in the full sum of $3,366.03, with interest and court costs, simply saying that it had allowed certain credits claimed by the defendants which it felt had been proved and disallowed others of which the proof had fallen short.
After a review of the record, and the briefs of counsel, this court is of the opinion that there are only two major issues up for decision. The first of these concerns the various credits, and the second, although also in the form of a question regarding credit, concerns the issue as to the distribution and application of the insurance proceeds.
In discussing both of these issues, we must always keep in mind the general rule that the factual determinations of the trial court, particularly when based on an evaluation of the credibility of the witnesses, should not be disturbed on appeal unless manifestly erroneous. Lewis v. Liberty Mutual Insurance Co., 215 So.2d 138, 140 (La. App.3d Cir., 1968), and citations therein.
1) The Credits.
Of concern here are five alleged payments, each of which the defendants claim should have been deducted from the amount owed, and which the lower court, except for one, excluded from deduction.
February 13, 1963$125.00This $125.00 payment, the defendants did not claim credit for in the answer which they filed. However, the note which was introduced in evidence does have this payment endorsed on the reverse side and plaintiff concedes that it should be treated as a valid credit. The trial court allowed the credit against the amount of the note, and we find no error in such action.
April 29, 1963$100.00On this date, defendant, Billy Gautreau, in his own handwriting, made a check to plaintiff in the amount of $100.00, which designated on its face that the check was for "gravel". The defendants claim that this should be credited on the note, but the evidence in this *736 case shows that the plaintiff did purchase from one Thomas Newman certain gravel to be used in the parking lot on the grounds of the Farmhouse Club. The defendants were to owe plaintiff reimbursement for such amount. It is plaintiff's contention and obviously the lower court agreed, that this $100.00 was actually partial payment for the gravel. With such an interpretation we see no error.
June 10, 1963$200.00Again, here was a check signed by defendant, Billy Gautreau, which had written on it "gravel and lease". The evidence revealed that in addition to owing plaintiff for the gravel, the defendants had entered into an oral rental or lease agreement with the plaintiff concerning a house owned by the plaintiff, located next to the Farmhouse Club. Plaintiff contended that this check was to be applied to the indebtedness on the gravel as well as the indebtedness on the lease, and had no applicability to the promissory note. The lower court obviously found that defendants could not sustain the burden of proof incumbent upon them to show that this was rather a credit to the note, and again, we find no error in the court's interpretation.
June 17, 1963On this date the defendant, Billy Gautreau, made a check in the amount of $125.00, which this court notes is the correct amount of the monthly payment, however, written on the check is the notation "for lease", and again, we are forced to say that the lower court was correct in its disallowing this as a credit on the note.
December 15, 1964$260.00As a basis for this credit, the defendants introduced a credit memo signed by one of their employees who had supposedly given the plaintiff $260.00 out of the cash register of the Farmhouse Club, and indicated such disbursement on the club records. The lower court rightly disallowed this as a valid credit.
In discussing these credits, this court has given significance to the notations on the checks as indicating the reason for their being issued. In the absence of any proof which were to change the purported designation of the funds, given by the debtor to the creditor, to an account or to a debt other than indicated on the check, this court can do naught but follow the interpretation of the lower court, who obviously felt itself bound by the defendants' own notations as to what was being paid for. Were there evidence otherwise than the fact that the defendants did in fact owe the plaintiff for certain gravel and rentals, the notations on the check would have no significance whatsoever.
In summary, it is our opinion that the lower court rightly rejected the four credits and gave judgment to the defendant in the amount that it did.
2) The Insurance Proceeds.
As was noted previously, the suit against the insurance companies was filed some four days prior to the filing of this suit, and judgment was rendered sometime during the trial of this case. The plaintiff had intervened in the suit of defendants, against the insurers, claiming the total amount of the note as a basis for recovery. The lower court, after considering certain computations, which the plaintiff herein denies are correct, disbursed the funds as indicated previously. Plaintiff herein alleges that $1,000.00 of the amount received should be applied in reimbursement of his loss of the contents which he owned. Defendants plead the doctrine of equitable estoppel to prevent such, and demand that the total amount be applied as per the prayer of plaintiff's petitionthat is, to the note.
The issue to be decided by the court is whether the $1,000.00 could be rightly applied by plaintiff to the loss of the contents of the building, or whether the doctrine of equitable estoppel or some other principle of law, would prevent this and demand that he apply the total of the sum received to the indebtedness of the note.
*737 Equitable estoppel is defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence. From, Montague v. Weil & Bro., 30 La. Ann. 50; Shirey v. Campbell, 151 So.2d 557 (La.App.2d Cir., 1963), and citations therein.
Since estoppel bars the normal assertion of rights, courts have always applied the doctrine cautiously. Selber Bros. v. Newstadt's Shoe Stores, 203 La. 316, 14 So.2d 10 (1943); Succ. of Butterworth, 195 La. 115, 196 So. 39 (1940); Louisiana Oil Refining Corporation v. Williams, 170 La. 218, 127 So. 606 (1930).
After a reading of the authorities cited above, and those mentioned by defendant in his brief, this court simply feels that the doctrine is not applicable here. To raise an equitable estoppel, the record must establish not only that the pleader relied upon a representation or other conduct, but also that he was justified in so doing. Here we see no reliance or change of position to their detriment by defendants if we allow plaintiff to say that the $1,000.00 of the proceeds received by him was reimbursement for a loss and not to be applied to the note.
It was admitted by one of defendants on the stand, and it is in the contract of insurance, that $1,000.00 of the $13,500.00 coverage, applies to the contents. Therefore, of the disbursements of the proceeds of insurance, the defendants had no right to one certain part of the $13,500.00, namely $1,000.00. The only person who had a right to that $1,000.00, was the plaintiff, because the goods covered were owned by him. We must assume, that of any disbursements of the proceeds, at least $1,000.00 of the amount received by the plaintiff, constitutes reimbursement to him for the loss of the contents. Simple logic tells us that by subtracting the $1,000.00 from the amount he received, we will have the correct amount that was applied by the lower court to the note.
The judgment of the lower court represented judicial authority to a compromise arrived at between counsel over the insurance proceeds. All of the parties were aware of the plaintiff's ownership of the contents of the building, and therefore they must have considered the amount collected by plaintiff as covering this loss as well as a payment on the note.[1]
For a change in position and detriment, the defendants allege that had the plaintiff considered himself not completely paid off on the note, there were in fact other proceeds, those received by the defendants, from which he could have collected. But we note that at the time of this judgment, there was a strong chance of collection in the form of other insurance, and it is obvious that plaintiff conceded to such a compromise agreement believing that he might receive the balance of what was due on the note in some subsequent suit against the other insurers. Further, even if we were not to allow the plaintiff the deduction of the $1,000.00 for the loss, the ten percent attorney's fees were not considered in the amount given plaintiff. For that reason, the defendants had no right to consider themselves free from the obligation, in that part of the obligation was not paid. So this again strengthens the idea that the defendants sustained no change of position or detriment by the supposed acts or representations of the plaintiff in taking the $10,739.95.
*738 For the foregoing reasons, it is obvious that as to this issue, the lower court committed no manifest error in allowing the $1,000.00 as reimbursement for loss out of the insurance proceeds and in finality allowing plaintiff judgment in the amount of $3,366.03, representing the balance owed to him, plus interest from October 26, 1965, and cost.
For the foregoing reasons, the judgment of the lower court is found to be free of manifest error, and is hereby affirmed, costs of this appeal to be paid by defendant-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] In actuality this issue as to the $1,000.00 could be said to have been tried by consent, as per Art. 1154 of the C.C.P. (1960).