BARNETTE, Judge.
This is a suit for personal injuries allegedly sustained by plaintiffs as the result of the collapse of a building on the corner of Simon Bolivar and Jackson Avenues in the City of New Orleans. Plaintiffs were in the building immediately adjacent to the collapsed building and allege that the vibrations and concussions of the falling building threw them about the rooms occupied by them causing the alleged injuries. From a judgment dismissing their suit, plaintiffs have appealed. A separate suit bearing docket number 474-775 of the Civil District Court for the Parish of Orleans filed by another occupant of the building on the same cause of action and against the same defendants was consolidated with this suit for trial purposes. The plaintiff in that suit has not appealed, and, therefore, is not before us.
On the afternoon of October 9, 1967, plaintiffs Shirley Daniels, Lorraine Law, Selma James, Robert Jones and Emanuel Lombard were occupants of a building located at 2139 Simon Bolivar Avenue in the City of New Orleans. At that time the portion of the building occupied by them was being used as a campaign headquarters for a local election. The plaintiffs were campaign workers for a candidate who was running for office in the election. At the aforementioned time the defendant Rex General Contractors, Inc., through its agents and employees, was completing the raising of a one-story frame building on the corner of Simon Bolivar and Jackson Avenues for the purpose of remodeling it into a hotel. This building was immediately adjacent to the building housing the campaign headquarters, the two structures being separated by a narrow alleyway. The building had been raised to a level of approximately 8 to 10 feet and the workers were in the process of clearing debris from around the structure. At approximately 3 p. m., for unknown reasons, the raised building collapsed.
Plaintiffs allege that material or lumber of the collapsed building struck the building in which they were located and/or the vibration of the fall of the building was so great that plaintiff Shirley Daniels was thrown from the chair in which she was sitting to the floor; that plaintiff Lorraine Law was also thrown from a chair in which she was sitting to the floor; that plaintiff Selma Jones, who was standing near a wall, was thrown against the wall and fell to the floor; that plaintiff Robert Jones was thrown from his chair to the floor; and that plaintiff Emanuel Lombard, who was in the bathroom using the commode, was knocked off the commode and struck the commode and the bathtub. As a result of these alleged falls, each plaintiff has complained of injuries generally consisting of bruises and strains of the neck and back areas and of ankle sprains, the severity of the alleged injuries varying with each plaintiff.
*337 The building collapse and the alleged injuries occurred about 3 p. m., and the plaintiffs all went together to Dr. Alvin E. Johnson’s office for examination and treatment between 8 and 9 p. m. on the same day. All X rays were negative, but there were some objective symptoms of injury, the most prominent of which was “a large hematoma of the right clavicular area” on the patient Shirley Daniels. Dr. Johnson described it as a large swelling in the area just above the right collarbone at the base of the neck. He prescribed mild sedatives and pain relieving drugs for all plaintiffs except Selma James, who was pregnant. He recommended that she consult her obstetrician.
The plaintiffs continued under treatment of Dr. Johnson for periods ranging up to two months. Diathermal treatments were given and additionally “Thomas” (cervical) collars were prescribed for Selma James and Shirley Daniels. Dr. Johnson testified that much of the symptomatology was subjective.
All the plaintiffs testified that as a res-sult of the vibrations caused by the collapse of the building the room in which they were working was strewn with dust and plaster knocked from the walls and that the tables and chairs were turned over and thrown about the room.
In contradiction of this testimony is that of Walter R. Chevalier, Jr., president of Rex General Contractors, Inc., who inspected the campaign headquarters shortly after the accident. This witness testified, saying that when he inspected the premises : “There wasn’t nothing wrong. * * * There was no plaster knocked down on the floor * * * nothing.”
Gilbert Singleton, a barber, whose shop occupied the first room of the headquarters building, but which was closed on the day of the accident, testified that he inspected the premises the morning after the accident and found no evidence of disorder. When questioned as to the condition of his barbershop he stated:
“A Condition of my barber shop, actually it was nothing noticeable. Everything was in place. Everything was intact.
Q Explain further please. What do you mean by everything was in place?
A The bottles.
Q The bottles ?
A The bottles, the astringents which I used was on the shelf just as I left them, chairs, the windows, nothing was broken or anything. Everything was in regular position.
Q Approximately how many bottles did you have on the shelf ?
A I don’t know exactly, but it was several bottles.
* * * * * *
Q Were they in the same position as when you left them ?
A They was on the shelf that I left them on. Now, whether they moved an inch, half an inch, or whether they moved at all, I don’t know.
Q Had any bottles been overturned?
A No, no bottles overturned.
Q Do you have any mirrors in your shop?
A Yes.
Q What was the condition of those mirrors?
A The mirrors, they was in good condition. They were stationary in the same place.
Q Were the mirrors any different from the time you left them ?
A No.
Q Did you find any windows of the shop broken?
A No.
*338 Q Was any plaster broken ?
A No.
Q Was there any debris on your floor?
A No.”
Bennett B. Ross, who rented the premises at 2139 Simon Bolivar Avenue and was using the two back rooms as his campaign headquarters, testified that he inspected the rooms at about S o’clock on the afternoon of the accident. It was his testimony that the building appeared “orderly” and that there were no apparent changes in the rooms from his previous visit that morning.
Mildred Williams, operator of a restaurant located at 2111 Jackson Avenue, immediately adjacent to the rear of the collapsed building, was in her restaurant at the time the building collapsed. She testified that she heard a loud noise when the building fell but did not feel any vibrations.
Frank Singleton, real estate agent and rent collector for Walter Chevalier, viewed the headquarters premises at about noon the day after the accident and stated that “ * * * I saw everything in order.”
The collapse of the building is not disputed but the testimony of the witnesses on this point is that it fell away from the building occupied by plaintiffs. There is no physical evidence to the contrary, such as broken windows, dislodgment from foundation, misalignment, broken plaster, etc. Furthermore, the photographs filed in evidence show the collapsed building and debris therefrom not to be on or against but immediately adjacent to the building in question, but there is some testimony that it was struck by a falling timber. We have no doubt that it made a loud crashing noise, stirred up dust, and very probably caused vibrations in the adjacent building of sufficient intensity to alarm the occupants thereof.
The trial judge, in dismissing plaintiffs’ suit, stated in his reasons for judgment:
“After hearing the testimony of the witnesses and other evidence adduced at the trial, the Court concludes that the plaintiffs failed to prove by a preponderance of the evidence that the alleged injuries suffered by the plaintiffs were caused as a result of the collapse of the building located at the corner of Simon Bolivar and Jackson Avenues. In reaching this conclusion, the Court was unable to believe the testimony of the plaintiffs. For the foregoing reasons, the Court has rendered judgment in favor of the defendants and against the plaintiffs, dismissing their suit at their cost.”
It is highly significant that the trial judge unequivocally rejected the testimony of the plaintiffs. It is apparent that he found it incredible that they were all thrown about in the house and subjected to such violent trauma as to cause the alleged injuries without more physical evidence of damage to the building.
Findings of fact by the trial court, especially when based on an evaluation of the credibility of the witnesses, should not be disturbed unless manifestly erroneous. Calhoun v. Huffman, 217 So.2d 733 (La.App. 3d Cir. 1969); Abercrombie v. Maryland Casualty Company, 212 So.2d 554 (La.App. 3d Cir. 1968); Combs v. International Harvester Company, 115 So.2d 641 (La.App. 2d Cir. 1959); Resolute Ins. Co. v. Canadian Indem. Co., Los Angeles, 111 So.2d 523 (La.App. 1st Cir. 1959).
There is no medical testimony in the record to contradict that of Dr. Johnson, who examined and treated all the plaintiffs for their alleged injuries. Dr. Johnson stated that in this, as in all cases, the doctor accepts the patient’s statement of how the alleged injuries were sustained. It is his responsibility to treat rather than to inquire into the cause of a physical injury. We do not reject his testimony that the plaintiffs exhibited some evidence of traumatic injury, but we find no manifest error in the trial judge’s conclusion that the plaintiffs failed to prove by a preponderance of evidence a causal connection be *339 tween the alleged injuries and the collapse of the building.
For the foregoing reasons the judgment appealed is affirmed at appellants’ cost.
Affirmed.