# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-685

**NORA RICHARD**

**VERSUS**

**AKEEM KHALIF, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 12-C-4152-A
HONORABLE JAMES PAUL DOHERTY  JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED**.

**Roshell Jones**
**405 West Main Street - Suite 107**
**Lafayette, LA 70501**
**Telephone:  (337) 504-3437**
**COUNSEL FOR:**
    **Defendants/Appellees - Akeem Khalif, et al.**

**Olita Magee**
**303 West Vermilion Street – Suite 130**
**Lafayette, LA 70501**
**Telephone:  (337) 235-3383**
**COUNSEL FOR:**
    **Plaintiff/Appellant - Nora Richard**

**Patsy A. Randall**
**Patsy A. Randall, LLC**
**P. O. Box 337**
**Carencro, LA 70520**
**Telephone:  (337) 501-0562**
**COUNSEL FOR:**
      **Plaintiff/Appellant - Nora Richard**

**THIBODEAUX, Chief Judge.**

Plaintiff Nora Richard appeals the trial court's dismissal of her demand for specific performance and/or damages resulting from her eviction from leased property owned by Defendant Akeem Khalif. Finding that Richard violated the terms of her lease agreement which permitted Khalif to seek dissolution, the district court dismissed her claims. Richard asserts that the district court erred in recognizing Khalif's right to seek an eviction based upon a violation of the terms and conditions of the lease, and erred in denying her demand for specific performance and/or damages. We disagree and do not find that the district court's decision was manifestly erroneous. For the following reasons, we affirm the judgment of the trial court.

I.

**ISSUES**

We must determine:

1. whether the trial court erred in finding that Nora Richard violated the terms and conditions of the lease agreement, thus permitting Akeem Khalif to seek an eviction based upon dissolution of the lease.

2. whether the trial court erred in denying Nora Richard's demand for specific performance and/or damages.

II.

**FACTS AND PROCEDURAL HISTORY**

Akeem Khalif owned property in Opelousas, Louisiana that he wished to develop into home sites. Intending to also live on the property, Khalif expressed his unwillingness to rent to anyone with a criminal record. Kenneth Bob, Nora

Richard's son, first approached Khalif with the intent to rent a piece of his property. However, upon disclosure of Bob's criminal record, Khalif refused to enter into the lease agreement. On February 15, 2010, Khalif and Richard entered into a thirty-six-month "Lease with an Option to Purchase" regarding the same property. The agreement provided that Richard would make a down payment of $500, and would thereafter make thirty-six monthly payments of $150 to Khalif. At the end of the thirty-six-month lease, Richard would have the exclusive option to purchase the property for $500. The written lease agreement expressly prohibited renting, subletting, or granting use or possession of the leased premises without Khalif's written consent.

Soon thereafter, Bob and his fiancée purchased a mobile home, spent a substantial amount of money preparing the land, installed a sewer system, and ultimately moved onto the property in August of 2010. Khalif claimed to be unaware that Bob and his fiancée, instead of Richard, were occupying the property, and that he discovered this fact in either April or May of 2012. From the start of the lease until June of 2012 Richard paid the monthly fee directly to Khalif. However, in July of 2012, and shortly before the expiration of the lease purchase agreement, Khalif began rejecting payments.

In July of 2012 Richard was served with an eviction notice. Richard thereafter filed a Petition for Specific Performance, and later amended her petition for damages, requesting that the court order Khalif to execute the sale of the property in accordance with the terms of the lease agreement, as all payments had been made. The eviction proceedings and the Petition for Specific Performance were consolidated. The trial court found that Richard violated the lease agreement,

which permitted Khalif to seek dissolution of the agreement, and denied Richard's request for specific performance and/or damages. Thereafter, Richard appealed.

## III.

## STANDARD OF REVIEW

Absent manifest error or unless it is clearly wrong, an appellate court may not set aside a trial court's finding of fact. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "The factual determination of the trial court particularly when based upon an evaluation of the credibility of opposing witnesses should not be disturbed on appeal unless manifestly erroneous." *Lewis v. Liberty Mut. Ins. Co.*, 215 So.2d 138, 140 (La.App. 3 Cir. 1968). Accordingly, if the trial court's findings were reasonable based upon the entire record and evidence, we must not reverse. *Housley v. Cerise*, 579 So.2d 973 (La.1991).

## IV.

## LAW AND DISCUSSION

**Right to Eviction Based Upon Dissolution of the Lease**

Richard first contends that the trial court erred in finding that she violated the terms and conditions of the lease agreement, thus permitting Khalif to seek an eviction based upon dissolution of the lease. We disagree. Richard and Khalif entered into a lease agreement which prohibited renting, subletting, or granting use or possession of the leased premises without the lessor's written consent. A lessor may obtain dissolution for any use of the property in violation of the lease agreement. *Tullier v. Tanson Enter's Inc.*, 367 So.2d 773 (La.1979). Louisiana Civil Code Article 2719 further provides that "[w]hen a party to the

lease fails to perform his obligations under the lease or under this Title, the other party may obtain dissolution of the lease. . . ." While Khalif maintains that Richard violated the terms of the agreement by subletting the property to her son, we find no evidence that Richard and her son maintained such an agreement. No written agreement was drafted or signed, and throughout the duration of the lease agreement Richard maintained responsibility for all rent payments. It is uncontested that Bob occupied the premises from August 2010 until the termination of the lease agreement. We, therefore, find that Richard violated the terms of the lease agreement by granting use and possession of the leased premises to her son and his family. Accordingly, we find that Khalif was permitted to seek an eviction based upon dissolution of the lease.

**Richard's Demand for Specific Performance and/or Damages**

*Equitable Estoppel*

Richard maintains that her claim for specific performance and/or damages should have been granted due to Khalif's fraudulent rental practices. Richard relies heavily on the doctrine of equitable estoppel in making the argument that the trial court erred in denying her demand.

> Equitable estoppel is defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith the doctrine is designed to prevent injustice by barring a party, under special circumstances from taking a position contrary to his prior acts, admissions, representations, or silence.

*Calhoun v. Huffman*, 217 So.2d 733, 737 (La.App. 3 Cir.), *writ denied*, 253 La. 878, 220 So.2d 460 (La.1969).

Bob testified that Khalif instructed him to allow someone with a clear criminal record to enter into the lease agreement on his behalf. Relying on this, and soon thereafter, Richard entered into the lease agreement with Khalif. Bob further testified that in reliance upon Khalif's assent he invested over $18,000 in his mobile home, preparation of the land, and a sewer system.

Richard further insists that Khalif is equitably estopped from seeking an eviction based on dissolution of the lease due to his purported knowledge and acquiescence of Bob's continued presence on the property. In addition to Khalif living only 500 feet away from the property in question throughout the duration of the renovation and the years of Bob's tenancy, Bob testified that he saw Khalif several times per week passing on the property, and that his children waited for their school bus every morning on a corner that was visible to Khalif. Although rental payments were made directly from Richard, the checks used indicated a different address, serving as an indicator that Richard did not live on Khalif's rental property. Richard maintains that she justifiably relied on Khalif's actions. For that reason, Bob and his family were allowed to make substantial improvements to the land and to live on the property for three years.

Finally, Richard argues that Khalif has a history of filing eviction proceedings against tenants that have nearly paid off their properties. For that reason, he should be prevented from continuing his pattern of fraudulent rental practices.

We remain unpersuaded to apply the doctrine of equitable estoppel to the facts of this case. "To raise an equitable estoppel, the record must establish not only that the pleader relied upon a representation or other conduct, but also that he was justified in so doing." *Huffman*, 217 So.2d 733 at 737. The facts of this case

5

more clearly indicate that Richard and Bob's actions were in direct conflict with Khalif's intentions and what he was knowledgeable of at the time. Although Bob testified that Khalif encouraged him to have Richard enter into the lease agreement on his behalf, we find that this is in direct conflict not only with Khalif's expressed desire to deny tenants with criminal records, but also with the signed lease expressly prohibiting a lessee from granting use or possession of the leased premises without lessor's consent. Accordingly, we do not find that Richard was justified in relying on Khalif's representations as to condone the use of principles of equity.

*Doctrine of Unclean Hands*

However, even if we were to find that Khalif acquiesced to Bob's continued presence on the property and that Richard justifiably relied on Khalif's representations, we find that harm to a party who has acted in bad faith cannot thereafter be remedied by principles of equity. Applicable here is the doctrine of unclean hands. "[T]he clean hands doctrine is 'alive and well in Louisiana' and prevents a litigant from maintaining an action if he must rely, even partially, on his own illicit or immoral act to establish a cause of action." *Guilbeau v. Domingues*, 14-328, p. 7 (La.App. 3 Cir. 10/1/14), 149 So.3d 825, 829, *writ denied*, 14-2283 (La. 1/16/15), 157 So.3d 1132 (quoting *Redar, LLC v. Rush*, 09-1417, p. 11 (La.App. 3 Cir. 11/17/09), 51 So.3d 859, 868, *writs denied*, 10-2784, 10-2832, 10-2837, 10-2869 (La. 3/25/11), 61 So.3d 662); *See* La.Civ.Code art. 2033.

Here, Richard's first act of bad faith was expressed in her testimony in which she maintained that she leased the property from Khalif with the intention of using it solely for her own benefit. The trial court believed, and further testimony

suggests, however, that Richard's true intention was to lease the property for the benefit of her son who was unable to enter into the lease agreement because of his criminal past. The trial court strongly considered the fact that the lease was entered into very shortly after Bob's request for tenancy was rejected, and just before Richard filed a document with the clerk of court requesting that the property in question be transferred to Bob and his fiancée if Richard were to become ill or deceased, and also when she finished payments. The trial court relied on this testimony to determine that Khalif was unaware that Bob was Richard's son when he entered into the lease agreement with her. But for her deceit, the agreement likely would not have been effectuated. Because "equity will not aid one who comes into court with unclean hands," we find that the trial court properly denied Richard's demand for specific performance and/or damages. *Hyatt v. Hartford Acc. & Indem. Co.*, 225 So.2d 102, 107 (La.App. 3 Cir.), *writs denied*, 254 La. 841, 227 So.2d 590 and 254 La. 847, 227 So.2d 592 (La.1969).

V.

## CONCLUSION

For the foregoing reasons, we affirm the holding of the trial court. Costs of this appeal are assessed to Plaintiff-Appellant, Nora Richard.

**AFFIRMED**.