CULPEPPER, Judge.
The plaintiffs are the lessors and the defendants are the lessees and lessees’ individual guarantors in leases of land in a shopping center for construction and operation of motion picture theaters and parking areas. The plaintiffs constructed additional parking areas outside the leased premises for which they now seek additional rent in the amount of $3,920.40 per month. They argue that their right to rentals arises out of and dates from a compromise agreement which terminated litigation by a third party in which essentially all of the parties in this suit were defendants. Additionally, plaintiffs seek to recover $1,420 as defendants’ share of work yet to be done on a parking area pursuant to the terms of the compromise agreement in question.
The defendants answered the plaintiffs’ demands with a general denial and a recon-ventional demand for damages in the amount of $9,637,000 for plaintiffs’ unreasonable refusal to permit alterations which would have converted each of the three theaters into a twin theater.
The trial court dismissed the claims of all parties against each other and assessed them equally for all costs of court. From this judgment, the plaintiffs have appealed and the defendants have answered the appeal.
The facts and issues involved in this lawsuit are set out succinctly by the trial court in its written reasons for judgment.
“In 1967 John Sheldon Toomer and Ronald Lockwood Toomer executed a lease to the Charles Cinema interests for the construction of a theater. This lease was amended in 1968. Thereafter in 1972, another lease was executed to substantially the same parties for the construction of a twin theater designated as Cinema II and Cinema III. This lease was twice amended in 1973. The properties described in these lease agreements include areas sufficient only for the buildings to be constructed with only token parking. Both leases however do contain provisions for the nonexclusive use of a parking area on the larger tract of land of which the leased premises form a part. Mention is made in both leases of plans which the owners have for the construction of additional commercial buildings and that the tenants of these will use the parking area in common with the patrons of the theaters. (Paragraph 13 of 1967 and Paragraph 12 of 1973 lease)
“The Finger-Kresge litigation followed the construction and operation of the theaters and was an attempt to secure an injunction against the use of the K-Mart parking lot across the street from the theaters, by the patrons of the theaters. Named as defendants in that litigation were in substance, the present plaintiffs and the present defendants. That litigation was terminated by a compromise agreement which called for the construction of a lighted parking area adjacent to the three existing theaters.”
Additionally, the compromise agreement states that the defendants in the Finger-Kresge litigation, i.e., all parties of this litigation, agree to bear the expense of preparing the parking area in accordance with requirements of the compromise agreement. The compromise agreement in question was entered into on September 21, 1979. The original petition in this matter was filed October 21, 1980.
On appeal, the plaintiffs argue that the trial judge erred in dismissing the claim of the plaintiffs for a fair rental value of the property which the plaintiffs converted into parking area for the defendants as a result of the Finger-Kresge litigation. The defendants base this argument on the articles of Louisiana Civil Code dealing with equity, particularly those dealing with unjust enrichment.
*290 In its reasons for judgment the trial court notes that all of the defendants in the Finger-Kresge litigation had an interest and a gain to be made in effecting a settlement of that litigation. The court goes on to note that neither the compromise agreement nor either of the lease agreements contain any provisions for the payment of additional rent by the defendants to plaintiffs for the use of the parking area. The trial court therefore concludes that there is no contractual basis for the rental claim asserted by the plaintiffs in this suit.
We concur with the trial court’s reasoning. Additionally, we hold that there is no equitable basis for the plaintiffs’ claim.
In their brief to this court, the plaintiffs admit that they entered into the compromise agreement to build additional parking spaces for the theater based on the “threats” by the defendants in this suit that if they did not, litigation would ensue. Additionally, in paragraph 12 of plaintiffs’ original petition, the plaintiffs state that the settlement agreement entered into in the Finger-Kresge litigation was “entered into at the request and insistance (sic) of defendants.”
Louisiana Civil Code Article 3071 defines a transaction or compromise as follows:
“A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.”
The compromise agreement makes no mention of any settlement of future litigation. However, by the plaintiffs’ own admission, part of the cause of entering into the compromise agreement was pressure from the defendants in this lawsuit to provide them with additional parking. Obviously, there had been a parking problem at the cinema area such that patrons of the cinemas had begun to impose a burden on neighboring lots. Therefore, there was adequate cause for the plaintiffs to enter into the compromise agreement of the Finger-Kresge litigation. The defendants in the present suit were not unjustly enriched to the detriment of the plaintiffs.
The plaintiffs’ second demand is for $1,420, which plaintiffs contend is defendants’ share of work yet to be done on the parking area which was built pursuant to the compromise agreement. As to this claim, the trial court notes:
“The evidence indicates the plaintiffs and defendants agree to share the expense of preparing the parking area in accordance with the requirements of the compromise agreement. Plaintiffs now seek to recover one-half of the amount of a bid for finishing the work. However, this work has not yet been performed and plaintiffs have not paid the contractor so that they are not presently entitled to a judgment in their favor for a sum they have not paid.”
We concur with the reasoning of the trial court.
In the reconventional demand, the defendants complain that the plaintiffs have unreasonably refused to permit structural alterations which would have divided each of the three cinemas into twin theaters. Defendants contend that as a result of the plaintiffs’ unreasonable actions, they had been prevented from increasing their income and profits which resulted in damages in the amount of $9,637,000. The evidence at trial revealed that to twin the theaters, a partition would be built down the middle of each of the auditoriums. Defendants claim that this would have doubled their gross for each of the cinemas.
There is no mention in any of the lease agreements as to whether or not such construction is permitted or prohibited under the lease. Likewise, there is no mention of whether permission from the lessor would be necessary for the lessee to make such an improvement. However, based on the findings of fact by the trial court, which we find are supported by the record, it is unnecessary for us to reach the issue of whether or not the defendant would have a right to construct such partition with or *291 without the permission of the plaintiffs. The trial court found as a matter of fact that there was only one request made to the plaintiffs for the construction of such a partition and that this request was only as to one of the three theaters in question. The plaintiffs then suggested a meeting to discuss various items including this request. The defendants chose to construe this reply as an ultimatum which they felt was not acceptable and they did not attend the meeting in question. The defendants then made no further attempt to discuss this issue or pursue the matter. The trial court found as a matter of fact that the defendants abandoned their request and negotiations for a twinning of the theaters before securing a definitive denial. Based on the halfhearted demand and the lack of a definitive denial, the trial court concluded that the reconventional demand was without merit. We agree.
In their answer to the appeal, defendants also contend that the trial court’s ruling that all costs of court would be shared equally between the plaintiffs and defendants is in error. Code of Civil Procedure Article 1920 provides that the trial court may render judgment for costs or any part thereof against any party “as it may consider equitable.” Considering the ruling of the trial court dismissing all claims, we hold that the trial court made an equitable division of these costs within its great discretion.
For the reasons assigned, the judgment appealed is affirmed. Costs of appeal are assessed one-half each to plaintiffs and defendants.
AFFIRMED.