441 So.2d 260 (1983)
FRED H. MORAN CONSTRUCTION CORPORATION
v.
Hameed A. ELNAGGAR, et al.
No. 83 CA 0006.
Court of Appeal of Louisiana, First Circuit.
October 11, 1983.
Rehearing Denied November 22, 1983.
*261 J. Arthur Smith, III, Baton Rouge, for plaintiff-appellee Fred H. Moran Const. Corp.
Robert R. Rainer, Baton Rouge, for defendant-appellant Hameed A. Elnaggar, et al.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This suit commenced as one for executory process on a mortgage note for failure to timely make an installment payment. The mortgagors filed a petition for injunction to arrest the seizure and sale alleging that the executory proceeding was premature because the mortgagee regularly accepted late payment of monthly installments, the mortgaged property had serious redhibitory vices and defects which were the subject of pending litigation, and the mortgage signatures were procured by promises made by the mortgagee which were not kept. The mortgagors obtained a temporary restraining order arresting the sale and sought damages and attorney fees for wrongful seizure. The trial court granted a preliminary injunction, dismissed the claims for damages and attorney fees, ordered each side to pay their own expert witness fees and divided the court costs equally between the parties. The mortgagors devolutively appealed the rulings of the trial court which dismissed their claims for damages and attorney fees, ordered them to pay their own expert witness fees and cast them for one-half of the costs. The mortgagee answered the appeal asserting that the trial court committed error by granting the preliminary injunction, assessing it for its own expert witness fees and casting it for one-half of the costs.

FACTS
On August 20,1981, Hameed A. Elnaggar and Kathleen Jordan Elnaggar purchased a home and lot located in the Meadows Subdivision in East Baton Rouge Parish from Fred H. Moran Construction Corporation (Moran). The purchase price was $235,000. A down payment of $35,000 was made and the balance was financed by a promissory note secured by a mortgage on the property. ($5,000 of the down payment was paid when the sale and mortgage was executed, and a $30,000 unsecured demand note was given to Moran to be paid when the Elnaggars sold their home in Denver, Colorado.) The mortgage note was payable in 36 monthly installments due on the fifth day of each month commencing on October 5, 1981.
During the period of August of 1981 through December of 1981, the Elnaggars discovered what they considered to be numerous defects in the mortgaged premises. They called upon Moran to repair these defects. Moran agreed to make some of the *262 repairs but denied responsibility for others. On January 14,1982, Elnaggar made formal written demand upon Moran to make the repairs requested. Moran replied in writing on February 1, 1982, agreeing to perform some of the repairs but declining to do others. By a subsequent letter of February 9, 1982, Moran further proposed to give Elnaggar a check for the costs of repairs that Moran agreed to or have another contractor come in and make the repairs. On February 17, 1982, Elnaggar advised Moran of additional defects including a water seep on the brick chimney wall and defects in the recessed planters in the living and dining rooms. By letter dated February 26, 1982, Moran denied responsibility for these additional defects.
During the period from August 1981 to March of 1982, Moran proposed to develop the property immediately adjacent to the Elnaggar home and lot as a new subdivision. Apparently, the Elnaggars and others actively opposed this development before the Parish Planning Commission and the Parish Council.
On March 8, 1982, the Elnaggars filed a redhibitory action against Moran alleging the defects that they had called upon Moran to remedy.
On July 30, 1982, Kathleen J. Elnaggar made out the monthly installment check for the payment due on the mortgage note on August 5, 1982. Inadvertently, Mrs. Elnaggar failed to deliver the check to the Baton Rouge Bank and Trust Company before leaving to go on vacation in Florida with her family prior to the installment's due date. Moran learned that the August 1982 installment was not timely paid and on August 16, 1982, instituted this suit for executory process. The Elnaggars learned of the suit on August 18, 1982, and thereafter discovered that the payment check had not been delivered. The Elnaggars tendered the check in payment, but this tender was refused.
In preparation for the hearing on their request for a preliminary injunction, the Elnaggars hired consulting experts and allegedly discovered cracks in the sheetrock walls, exterior brick, floor and slab of their home and an upward bulge in the roof.

PRELIMINARY INJUNCTION
The defendant in an executory proceeding may arrest the seizure and sale of the property by injunction when the debt secured by the mortgage is extinguished or is legally unenforceable. La.C.C.P. art. 2751. The trial judge ruled that the Elnaggars had made a prima facie showing of redhibitory defects and that if they were successful in their redhibitory action against Moran the debt would be extinguished. The trial judge also ruled that the debt was not legally enforceable at the time of filing suit because the mortgagee accepted late payment of the installments without objection over a period of time and thus waived his right to demand acceleration of the note without first placing the mortgagors in default or notifying them that future late payments would not be accepted. Moran contends that both of these rulings are in error.
The doctrine of forebearance is succinctly defined in First National Bank v. Higgs, 406 So.2d 673, 675 at footnote 1 (La.App. 2nd Cir.1981), as follows:
Forebearance is a circumstance which can give rise to estoppel. Forebearance exists when a creditor acquiesces in or tolerates substandard performance of an obligation by the debtor without exercising his rights to enforce the obligation, thereby implying that such conduct is sufficient.
When forebearance reaches the level of equitable estoppel the creditor will be barred from suddenly demanding strict performance in order to avoid injustice to the debtor. Calhoun v. Huffman, 217 So.2d 733 (La.App. 3d Cir.1969); Sternberg v. Mason, 339 So.2d 373 (La.App. 1st Cir.1976). However, the creditor's mere acquiescence or forebearance by not using all of his rights, when accompanied by protest or complaints to the debtor, does not rise to the level of estoppel which will later bar the creditor from using those rights to enforce the obligation.

*263 Burris v. Gay, 324 So.2d 11 (La. App. 2d Cir.1975), writs denied 326 So.2d 377 [La.1976].
In Sternberg v. Mason, 339 So.2d 373, 377 (La.App. 1st Cir.1976), writ denied 341 So.2d 901 (La.1977), appears the following:
An obligee is, of course, entitled to have the contract strictly complied with and to receive his payments promptly when due. However, when there has developed a course of conduct, i.e., routine late payments without complaint or objection over an extended period of time sufficient to create a justifiable belief that it is of no moment, it is essential in the interest of fairness that the obligee make known to the obligor his intent to discontinue acceptance of late payments.
The Elnaggars made their monthly installment payments at the Baton Rouge Bank and Trust Company for the account of Moran. The bank's collection ledger shows the following payments:

DUE DATE DATE PAID
October 5, 1981 October 8, 1981
November 5, 1981 November 6,1981
December 5, 1981 December 21,1981
January 5, 1982 January 20,1982
February 5,1982 February 9,1982
March 5, 1982 March 5,1982
April 5, 1982 April 5,1982
May 5, 1982 May 5,1982
June 5, 1982 June 7,1982
July 5, 1982 July 7,1982

Fred H. Moran, Moran's President, testified that after the Elnaggars filed the redhibitory action, he started checking with the bank on when their monthly payments were made. He candidly admitted that no advance warning was given to the Elnaggars that suit would be instituted if payment was late and that he authorized foreclosure because the Elnaggars were resisting his new subdivision. He learned that the August 5, 1982 payment was late on August 8th or 9th and authorized the filing of suit. When the Elnaggars tendered payment of the August installment, he instructed his attorney and the bank not to accept it.
The trial court ruled that Moran acquiesced in a course of conduct that tolerated routine late installment payments without complaint, that Moran did not put the Elnaggars on notice that no additional late payments would be accepted and that if payment was not timely executory proceedings would be initiated. The trial court concluded that the Elnaggars had proven the affirmative defense of forebearance as defined in Sternberg v. Mason. Nolan J. Cunningham Apartments, Inc. v. Dupre, 428 So.2d 1046 (La.App. 1st Cir.1983). After this case, we conclude these findings of fact this case, we conclude these findings of fact of the trial court are not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).[1]

DAMAGES AND ATTORNEY FEES
La.C.C.P. art. 2751 provides, in pertinent part, as follows:
In the event injunctive relief is granted to the defendant, if the court finds the seizure in the executory proceeding to be wrongful, it may allow damages to the defendant. Attorney's fees for the services rendered in connection with the injunction may be included as an element of the damages. (Emphasis added).
The official revision comment for this part of Article 2751 provides as follows:
The second paragraph to this Article, which was enacted in 1981, is intended to give the trial judge the discretion to award damages and attorney's fees where the seizure through executory process was wrongful. It is not intended to require that damages and attorney's fees be awarded in every case where an injunction is issued, for example, where an injunction is issued because of a technical deficiency or a technical error.
(Emphasis added).
*264 The trial judge exercised the discretion granted to him by Article 2751 and declined to award damages and attorney fees. He did not feel that such an award was justified because the installment payment was not made on its due date and Moran had all the necessary elements to support executory process. The defenses asserted by the Elnaggars were affirmative ones that were technical in nature and not evident from an examination of the sale and mortgage and the mortgage note. In view of all of the facts and circumstances of this case, we cannot say that the trial judge abused the much discretion accorded him by law.

COSTS
Both sides to this dispute contend that the trial court committed error by dividing the costs equally between them and requiring each side to pay its own expert witness fees. La.C.C.P. art. 1920 authorizes a trial court to render such judgment for costs or any part thereof against any party as it may consider equitable. Although the Elnaggars were successful in securing a preliminary injunction, they failed in their claim for damages and attorney fees. In this posture, the trial court did not commit error by dividing the costs equally between the parties and requiring each to pay it own expert witness costs. Toomer v. Charles Cinema, Inc., 425 So.2d 288 (La.App. 3rd Cir.1982); Purcell v. State Farm Insurance Company, 417 So.2d 16 (La.App. 4th Cir. 1982); Young Oil Company of Louisiana, Inc. v. Durbin, 412 So.2d 620 (La.App. 2nd Cir.1982). The costs of this appeal are also to be divided equally between the parties. La.C.C.P. art. 2164.

CONCLUSION
For the foregoing reasons, the judgments of the trial court are correct and are affirmed. The costs of this appeal are to be divided equally between the parties.
AFFIRMED.

ON APPLICATION FOR REHEARING
PER CURIAM.
In its application for a rehearing Moran contends that the Elnaggars have committed new and independent defaults which render moot their claim for injunctive relief on the ground of forebearance of prior late payments. Moran attaches an affidavit asserting these facts for this court to review. Moran argues that since the forebearance claim is now moot we should consider and reverse the allegedly erroneous redhibition ruling of the trial court so that a new suit for executory process can be filed. This court has no jurisdiction to review the new evidence contained in the affidavit. La.Const. art. V, § 10; La.C.C.P. art. 2132; Title Research Corporation v. Rausch, 433 So.2d 1105 (La.App. 1st Cir.1983). Moran may still litigate the redhibitory action filed by the Elnaggars on March 8, 1982.
NOTES
[1] Because we have ruled that the trial court was correct in determining that the Elnaggars proved forebearance by Moran, it is unnecessary for us to pass on the redhibitory defects defense.