**RESOLUTION TRUST CORPORATION, as Receiver of Delta Savings & Loan Association, Inc., Plaintiff–Appellee,**

v.

**Paul J. MURRAY, Jr., and June Leblanc Murray, Defendants–Appellants.**

No. 90–3148.

United States Court of Appeals, Fifth Circuit.

July 10, 1991.

91

Denechaud & Denechaud, Don M. Richard, Richard W. Martinez, Sharon L. Andrews, New Orleans, John C. Anderson, Baton Rouge, La., for defendants-appellants.

George Denegre, Jr., Edward J. Gay, III, Liskow & Lewis, New Orleans, La., for plaintiff-appellee.

Before BROWN, SMITH and WIENER, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

A savings and loan institution brought this Louisiana diversity action to enforce two promissory notes made by Paul and June Murray (the Murrays). The Murrays counterclaimed asserting that the S & L failed to credit against the notes certain services under the Louisiana law of compensation, that it reneged on an oral pledge to provide further loans to the Murrays entered into contemporaneously with the promissory notes, and that the S & L violated the Louisiana Unfair Trade Practices Act (LUTPA), La.R.S. 51:1401 *et seq.* While the suit was pending, the S & L was declared insolvent, and the Resolution Trust Corporation (RTC) ultimately became the institution's successor in interest in the suit. The district court thereafter granted RTC's motions for summary judgment on both the principal demand and the Murrays' counterclaims. We affirm.

*Promises, Promises*

On July 18, 1985, the Murrays executed a promissory note (First Note) for $819,000 payable to Delta Savings & Loan, Inc. (Delta Inc.). The First Note was secured by a mortgage and bore interest at the annual rate of 13 percent. It required monthly payments of interest and payment on August 1, 1986, of all principal and interest due. The balloon payment was not made. On October 30, 1987, the Murrays executed another promissory note (Second Note) for $100,898.50 payable to Delta Inc., and bearing interest at the annual rate of 7 percent. On its face, this Second Note required elev-

en monthly payments of $645.38 and one final balloon payment on October 29, 1988, of all principal and interest due.

Delta Inc. filed suit on the two notes in Louisiana state court on February 1, 1989, praying for judgment against the Murrays for the balance due on the notes, recognition of the mortgage securing the First Note, and attorneys' fees for bringing the action. The Murrays filed an answer and a reconventional demand against Delta Inc., asserting that Delta Inc. violated the LUTPA by engaging in unfair, deceptive, unethical, oppressive, and unscrupulous conduct and by preventing the Murrays from successfully developing certain real estate. In addition, the Murrays claimed that Delta Inc. refused to honor its commitment to make additional loans to the Murrays.

*Singing the Delta Blues*

On August 7, 1989, about five months after Delta Inc. filed suit against the Murrays, the Federal Home Loan Bank Board (FHLBB) declared Delta Inc. to be insolvent, terminated its powers, and appointed the Federal Savings and Loan Insurance Corporation (FSLIC) as Delta Inc.'s Receiver and Liquidator. The FHLBB also organized Delta Savings & Loan Association, F.A. (Delta FA), transferred substantially all of the assets (including the two Murray notes) and certain liabilities of Delta Inc. to Delta FA, and appointed the FSLIC as Conservator of Delta FA. General liabilities, including the Murrays' counterclaims against Delta Inc., were not assigned.

Effective with the passage of the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA) on August 9, 1989, RTC succeeded to the FSLIC's roles as Conservator of Delta FA and Receiver of Delta Inc. *See* FIRREA § 501, 12 U.S.C. § 1441a. On September 6, 1989, on RTC's motion the state court substituted RTC as Receiver of Delta Inc. as party plaintiff and defendant-in-reconvention but failed to recognized RTC in its capacity as Conservator as a party to the action. That same day, RTC removed the case to federal court.

On October 9, 1989, after removal was complete, RTC mysteriously moved the state court to issue an Amended Substitution Order reflecting that RTC as Conservator of Delta FA is the party plaintiff and that RTC as Receiver of Delta Inc. is the defendant-in-reconvention. On October 30, RTC filed in the federal district court an Ex Parte Motion and Proposed Order for leave to file an Amended Notice of Removal to reflect the distinct capacities in which RTC is a party to the proceedings. The district court granted the motion by order, stating that RTC as Conservator of Delta FA is the party plaintiff to enforce the promissory notes, with RTC as Receiver of Delta Inc. the proper party to defend the Murrays' reconventional demand.

In December 1989, RTC, in both of its capacities, moved for summary judgment on the principal and reconventional demands. Attaching the affidavit of Delta FA Assistant Vice President Cedric Harrison, RTC stated that the First and Second Notes were in default and that, although the Murrays had tendered some payments on the First Note between June and December of 1988, they were returned because they were insufficient to cure the default on that note. RTC sought judgment in the amount of $837,604.07,[1] plus costs, late charges, interest accruing after November 1989, and attorneys' fees.

The Murrays' formal opposition, accompanied by the affidavit of Paul Murray, reasserted their reconventional demand that Delta Inc. had failed to fulfill further loan commitments in violation of the original agreement on the Second Note, and also had violated the LUTPA. The Murrays in the opposing papers also asserted that they had made payments on both notes from June to December of 1988 and that, in December 1988, Delta Inc. had wrongly returned payments which would have brought the First Note current. Finally, for the first time, the Murrays claimed that they were entitled to a set-off against the notes for architectural and sewerage treatment services they provided Delta Inc.

RTC thereafter filed a Supplemental Affidavit of Cedric Harrison in which Harrison admitted that the Murrays had indeed made payments from June through November 1988 and that these were accepted by Delta Inc. However, Harrison stated that the original mistaken affidavit statement did not affect the RTC's correct balance due on the notes. Furthermore, he stated that the checks which the Murrays tendered in December 1988 were in fact returned because "they were insufficient to cure the default on the First Note." ·

The court entered summary judgment in favor of the RTC as Conservator on the principal demand and recognized the security, and in favor of the RTC as Receiver on the Murrays' reconventional demand. The Murrays bring this appeal.

### Standard of Review

■ We review the district court's grant of summary judgment in this case *de novo*. As we have often repeated, summary judgment is proper only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). In opposition the Murrays must present more than "evidence [which] is merely colorable or is not significantly probative"; rather, they may only defeat RTC's motion with "significant probative evidence demonstrating the existence of a triable issue of fact." *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 877 (5th Cir.1984).

### RTC as Conservator Crashes the Party

■ The Murrays first contend that RTC's attempt to correct its capacities and properly make RTC as Conservator the party plaintiff in the removed case was ineffective because it involved the state court after removal. The Murrays are correct that a state court has no power to proceed with a case which has been properly re-

---

1.  This figure represents the balances which RTC calculated were due on the First and Second Notes of $722,326.05 and $115,278.02, respectively.

moved to federal court. *See* 28 U.S.C. § 1446(d) (state court powerless in case after its removal to federal court); *Murray v. Ford Motor Co.,* 770 F.2d 461, 463 (5th Cir.1985) (state court had no power to set aside default judgment after removal had been perfected). We therefore cannot recognize the state court's October 9, 1989, Amended Substitution Order reflecting RTC as Conservator of Delta FA as the party plaintiff and RTC as Receiver of Delta Inc. as the defendant-in-reconvention.

■ The federal district court, however, identified RTC as Conservator of Delta FA as party plaintiff to the proceeding when it allowed RTC's October 30, 1989, Amended Notice of Removal. Although the original Notice was not in proper form, the Amended Notice indicated the proper capacities in which RTC is a party to the proceedings. Because the district court accepted the revision, we cannot allow the Murrays' proposed hypertechnical application of § 1446, especially after our *Farina v. Mission Investment Trust,* 615 F.2d 1068 (5th Cir. 1980). In *Farina,* a case which had been removed from Texas state court, we held that, where a party fails to make a F.R. Civ.P. 24(c) formal petition to intervene but judgment is rendered in its favor, it is within the district court's discretion to treat a motion to remove as also a motion to intervene, both granted by the court in "obvious acceptance" of the party as properly in the suit. *Id.* at 1074–75. To hold the opposite, we stated,

would render federal pleadings excessively technical, contrary to Rule 8(e)(1), which states that "No technical forms of pleadings or motions are required," and Rule 8(f) which states that "All pleadings shall be so construed as to do substantial justice."

*Id.* at 1074. Although the actions of RTC in both state and federal court has required much unnecessary labor on the part of all, we nevertheless hold that the federal district court's October 1989 action puts the legal imprimatur for formal substitution of the proper RTC parties in this case.

### The Reconventional Demand

■ We also reject the Murrays' argument that the district court erred in dismissing their reconventional demand that Delta Inc. had reneged on a pledge to provide further financing. In particular, the Murrays claimed that Delta Inc. was liable to them for failing, as promised, to advance financing for the acquisition and development of additional real estate.[2] This purported agreement was not in writing and, as such, was not in Delta Inc.'s official records. The RTC argued, and the district court held, that *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and its so-called "codification"[3] in 12 U.S.C. § 1823(e), bars the Murrays' claim. We agree.

■ *D'Oench, Duhme* immunizes the FDIC from defenses asserted against it based upon agreements not firmly established in the financial institution's records.

**2.** The Murrays do not appeal the district court's dismissal of their claim that Delta Inc. violated the LUTPA. The court correctly held that the LUTPA does not govern the actions of a state chartered savings and loan institution such as Delta Inc. *See* La.R.S. 51:1406 (expressly exempting actions of institutions subject to the jurisdiction of the commissioner of financial institutions); *State Bank of Commerce v. Demco of La., Inc.,* 483 So.2d 1119, 1121 (La.App. 5 Cir.1986) (LUTPA not applicable to state bank's powers to loan money or monitor or collect loans, which are within jurisdiction of commissioner of financial institutions).

**3.** There has been much discussion on the issue of whether § 1823(e) truly codifies the *D'Oench, Duhme* doctrine, is more limited, or goes further. *Compare, e.g., FDIC v. Wood,* 758 F.2d 156, 159 (6th Cir.1985) (*D'Oench* "generally considered" to have been codified in § 1823(e)) *and Bowen v. FDIC,* 915 F.2d 1013, 1015 n. 3 ("essentially a codification") *with FDIC v. O'Neil,* 809 F.2d 350, 353 (7th Cir.1987) (attempted codification overshot the mark) *and Hartigan v. Commonwealth Mortgage Corp. of America,* 723 F.Supp. 1258, 1261 (N.D.Ill.1989) ("the *D'Oench* doctrine sweeps more broadly than Section 1823(e)"). *See also, Kilpatrick v. Riddle,* 907 F.2d 1523, 1529 n. 2 (5th Cir.1990) (Brown, J., dissenting) (§ 1823(e) much more specific than *D'Oench, Duhme* ); Note, Borrower Beware: *D'Oench, Duhme* and Section 1823 Overprotect the Insurer When Banks Fail, 62 S.Cal.L.Rev. 253, 271–73 (1988). Since both *D'Oench, Duhme* and § 1823(e) apply to the instant case, we need not resolve this controversy.

*See* 315 U.S. at 456–57, 62 S.Ct. at 679, 86 L.Ed. at 961–62. Congress has applied the statutory version of the rule to the RTC when acting as a receiver of a failed institution. *See* 12 U.S.C. § 1441a(b)(4). In addition, the federal common law doctrine which has grown up around the landmark case has been extended to cover counterclaims, such as the Murrays' reconventional demand, *against* the federal entity. *See Bowen v. FDIC*, 915 F.2d 1013, 1015 (5th Cir.1990); *Beighley v. FDIC*, 868 F.2d 776, 784 (5th Cir.1989); *see also* 12 U.S.C. § 1821(d)(9)(A) (applying § 1823(e) to bar affirmative claims against FDIC as Receiver). In situations nearly identical to the instant case, we have held that the *D'Oench, Duhme* doctrine precludes the makers of a note from escaping liability by asserting that the lender violated an oral agreement to provide further financing. *See Federal Savings & Loan Insur. Corp. v. Murray*, 853 F.2d 1251, 1255 (5th Cir. 1988) (alleged oral agreements to fund additional loans "... are simply secret side agreements that the Court invalidated almost fifty years ago in *D'Oench* "); *Beighley*, 868 F.2d at 784; *FSLIC v. Kroenke*, 858 F.2d 1067, 1070 (5th Cir.1988). In the face of this strong authority we do not hesitate to uphold the district court's dismissal of the Murrays' assertion of oral agreements against RTC either as a defense to the unpaid notes or as an affirmative claim against Delta Inc.

### Compensation Claims

The Murrays, in their opposition to RTC's motion for summary judgment, presented for the first time their affirmative defense that they are entitled to a set-off against the notes for architectural

and sewerage treatment services they provided Delta Inc. The RTC argues that the Murrays waived this affirmative defense because they did not raise it in the responsive pleading, *see* F.R.Civ.P. 8(c), or supplemental pleading, *see* F.R.Civ.P. 15(d). *See Moore v. Tangipahoa Parish School Bd.*, 594 F.2d 489, 495 (5th Cir.1979) (affirmative defenses raised for first time in motion for new trial already waived). In reverence to the Rule mandating liberality in construction of the Federal Rules of Civil Procedure, *see* F.R.Civ.P. 1, we prefer not to rest our holding on this question of waiver because we hold that, in any event, the set-off/compensation claims may not be maintained either under *D'Oench, Duhme* or purely under Louisiana law.

▬ First, the Murrays' claims for set-offs are based upon alleged oral agreements which under the *D'Oench, Duhme* doctrine may not be maintained against the federal receiver. *See Kroenke, supra*, 858 F.2d at 1070 (oral agreements between debtors and banks generally ineffective against federal receiver). Therefore, the same result obtains as with the Murrays' reconventional demand.[4]

▬ Furthermore, Louisiana's law of compensation does not support the Murrays' claims. Louisiana Civil Code art. 1893 provides that "compensation takes place by operation of law when two persons owe to each other [debts] that are *liquidated and presently due.*" (Emphasis added.) Without even a figure from the Murrays for the value of the architectural services, and confusing information regarding the sewerage treatment services,[5] we find that the claims are clearly unliquidated, and therefore not maintainable

---

4. We also reject the Murrays' contention that, because the set-offs supposedly occurred by operation of law *prior to* the failure of Delta Inc., *D'Oench* does not apply. The *D'Oench, Duhme* doctrine does not require that the oral obligation arise after the institution fails but only that, as here, the adverse party attempt to enforce it against the federal receiver to reduce or erase the adverse party's liability. Also, as we discuss, the alleged debts were never liquidated under Louisiana law, and therefore it cannot be said that the set-offs occurred prior to Delta Inc.'s failure.

5. The Murray affidavit suggests that Delta Inc. paid $35,000 to an individual who co-owned a sewerage treatment facility with the Murrays. Instead of paying the Murrays a like sum, the affidavit states, Delta Inc. informed the Murrays that it would issue a credit toward the couple's indebtedness. The affidavit does not set forth what percentage of the facility the Murrays owned or who informed the Murrays that they would receive an offset or even the amount of the offset.

against RTC's action on the notes. *See American Bank v. Saxena*, 553 So.2d 836, 844–45 (La.1989) (contested claim against bank was unliquidated and could not be used as set-off against admitted debt); *Gulf Federal Savings & Loan Assoc. v. Nugent*, 528 So.2d 782, 784 (La.App. 3d Cir.), *writ denied*, 533 So.2d 19 (1988) ("An unliquidated claim for damages cannot be pleaded in compensation against a liquidated claim based on a promissory note."). Therefore, we affirm the district court's dismissal of the Murrays' set-off claims.

As this Court recently held in *Campbell Leasing, Inc. v. FDIC*, 901 F.2d 1244 (5th Cir.1990), our refusal to allow disputed set-off against a liquidated promissory note held by the federal receiver does not preclude the debtors' independent action for (liquidation of and) damages from such claims as would not be foreclosed by the principle of *D'Oench, Duhme*, either by way of defense or reconvention. *See id.* at 1249. This means that the Murrays had the right to assert any such claims against RTC as Receiver of Delta Inc., but may not bring the claims to escape liability on the promissory notes. *See id.* (debtors not allowed to "assert[ ] these claims as a set-off to liability on the note"). The Murrays have not brought any such independent claims here.

### Can RTC Call the Notes?

While the Murrays acknowledge that they owe these debts, in their answer they generally deny that they were in default on the two loans. In their opposition to RTC's motion for summary judgment, the Mur-

rays contest the allegation in the RTC affidavit of Cedric Harrison that the Murrays had made no payments on the loans since May 1988 and that their December 1988 payments were insufficient to cure the default. To his affidavit Paul Murray attached photocopies of a series of cancelled checks tendered and accepted by Delta Inc. from June to November 1988. Except for the payments made in July, each month's payments totalled $4,165.[6] The Murrays also assert that they tendered payments totalling $4,160 in December 1988, which they say was sufficient to cure the default, but that Delta Inc. returned the checks.

This discrepancy clearly does not generate a genuine issue of material fact. First, it was corrected by Harrison, in his supplemental affidavit, that Delta Inc. had received the June to November 1988 payments. However, this admission does not change the facts that the loans were due and payable well before December 1988.[7] More important, the Murrays do not deny that they had been either unwilling or unable to make the required balloon payments of the remaining balances and truly cure the defaults on the two notes.

Harrison also stated that the 1988 payments had been credited to the First Note, so that his calculations of the amounts due on the two loans were correct.[8] But the Murrays have neither offered a contradictory figure nor called RTC's figure into dispute in any material way by producing their own records or by factually disputing those of Delta Inc.

---

**6.** These payments, made to and accepted by Delta Inc. after June 1, 1988, were:

| Date | Amount | Date | Amount |
|------|--------|------|--------|
| 06/02/88 | $4,165.00 | 09/24/88 | $2,000.00 |
| 07/01/88 | 2,000.00 | 09/26/88 | 2,165.00 |
| 07/14/88 | 1,000.00 | 10/28/88 | 1,665.00 |
| 08/11/88 | 1,000.00 | 10/30/88 | 2,500.00 |
| 08/11/88 | 3,165.00 | 11/30/88 | 4,165.00 |

**7.** As we detail above, the First Note was payable on August 1, 1986, and the Second Note became due and payable on October 29, 1988.

**8.** While the Murrays indicated below and at oral argument that they understood that their monthly payments were somehow applied to both notes, RTC counters that no payments were ever made on the Second Note, and the Murrays in their brief suggest that with the December 1988 payments they "attempted . . . to bring *the First Note* current" (emphasis added). We need not delve into Delta Inc.'s records to resolve this quarrel because the Murrays have failed to proffer specific evidence contradicting RTC's calculations of the amount due on both notes. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986) ("[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

Delta Inc. had the right under the loans to demand payment at any time (within prescription) after the dates of maturity, regardless of the Murrays' monthly, but inadequate, payments, and did make such written demand in December 1988, before suit was filed. The Murrays' contention that their $4,160 tender somehow could have cured the long-standing default on either note—an audacious absurdity—is insufficient to present a genuine issue of material fact. The notes were due, and they were unpaid. Finally, the Murrays' position that RTC's affidavit error regarding the several 1988 payments somehow precludes summary judgment is equally untenable.[9]

### Conclusion

In sum, this case is, as we have said of similar suits on promissory notes, "fit grist for the summary judgment mill." *See FDIC v. Cardinal Oil Well Servicing Co., Inc.*, 837 F.2d 1369, 1371 (5th Cir.1988). The district court's entry of summary judgment in favor of the RTC on its principal demand and against the Murrays on their reconventional demand was therefore correct.

AFFIRMED.

---

**9.** Were we to construe this contention to mean that Delta Inc. somehow modified the original contracts by accepting monthly payments after the maturity dates of the notes, we would nevertheless have to hold that Louisiana law does not support it.

The Murrays point to a photocopy of a December 1988 installment loan bill for $4,165, which they contend Delta Inc. sent monthly to the Murrays, mainly for the proposition that the December 1988 payments cured any default on the First Note. However, the terms of both the First and Second original promissory notes are clear with regard to their maturity, and clearly support the RTC's position that the loans were already in default and demandable. While Louisiana law recognizes modification of written contracts by oral agreement or by the conduct of the parties in certain contexts, *see e.g., Peli-can Electrical Contractors v. Neumeyer*, 419 So.2d 1, 5 (La.App. 4th Cir.), *writ denied,* 423 So.2d 1150 (La.1982) (written contracts for construction may be modified by oral contracts and by the conduct of the parties), the implication that the December bill is a modification, accompanied with the Murrays' "impression" of the status of the loans, without more, is not sufficiently specific to raise a fact issue and defeat summary judgment. *See Matsushita, supra* note 8; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 276 (1986) (Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").