hBAGNERIS, J.,
dissenting.
I respectfully dissent from the majority opinion in the above captioned case. The doctrine of forbearance defined in First National Bank v. Higgs, 406 So.2d 673, at footnote 1 (La.App. 2 nd Cir.1981), as follows
Forbearance is a circumstance, which can give rise to estoppel. Forbearance exists when a creditor acquiesces in or tolerates substandard performance of an obligation by the debtor without exercising his right to enforce the obligation; thereby implying the conduct is sufficient.
When the forbearance reaches the level of equitable estoppel the creditor will be barred from suddenly demanding strict performance in order to avoid injustice to the debtor, Calhoun v. Huffman, 217 So.2d 733 (La.App. 3rd Cir.1969);
Sternberg v. Mason, 339 So.2d 373, 377 (La.App. 1st Cir.1976). However, the creditor’s mere acquiescence or forbearance by not rising all of his rights, when accompanied by protest or complaints to the debtor, does not rise to the level of estoppel which will later bar the creditor from using those rights to enforce the obligation. Burris v. Gay, 324 So.2d 11, 14 (La.App. 2nd Cir.1975), writs denied 326 So.2d 377 (La.1976). (Emphasis added.)
The Spurlocks rely upon the doctrine of forbearance in their contention that Mrs. Mesa is estopped from claiming that the late payments caused interest to accrue on the debt, so that the payments calculated *657 according to the amortization schedule did not completely satisfy the indebtedness.
Mrs. Mesa contends that under the law, if one takes longer to pay a debt than originally scheduled, one will owe additional interest at the rate stated in the note. The late payments will be credited first to the interest by authority of the LSA-C.C. IgArt. 1866. Therefore, as Mrs. Mesa applied the delinquent payments to the interest first, and the interest had increased due to delinquent payments, the Spurlocks still owes a principal balance. Mrs. Mesa acknowledges that under the doctrine of forbearance, her acceptance of late payments may mean that she cannot complain about or accelerate the debt because of future late payments. However, Mrs. Mesa contends that forbearance is not the same as forgiveness of a debt, the running of interest on the debt was not “ magically suspended” during the time that" the month payments were late, and therefore the Spurlocks still owed a principal balance.
The issue to decided is whether the doctrine of forbearance estops a creditor from collecting the additional interest owed on a note, due to habitual late payments by the makes of that note, when the creditor has failed to inform the maker that she will no longer tolerate late payments and will enforce all the rights she has by that note. Mrs. Mesa relies upon a federal fifth Court of Appeals opinion that discusses applicable Louisiana law, for the proposition that forbearance does not effect an extension or waiver of an obligation. Federal Deposit Ins. Corp. v. Louisiana National Bank, 653 F.2d 927, 928 (5th Cir.1981), involved two banks, the ICB and LNB, and their relationship after with the FDIC took over the failed ICB. At trial one of the issues litigated was whether LNB in some way waived rights upon default either by failing to immediately offset the deposits against the $500,000 owed by ICB on the notes and by allowing numerous withdrawals to be made on ICB-accounts after the date of acceleration, or by failing to take affirmative steps to collect the debt after sending the notice. The court found that absent an express agreement by LNB to forbear, LNB’s failure to file suit on the debt or to undertake other collection efforts was not sufficient to constitute a waiver. See Id. at 941. The Court relied upon Louisiana jurisprudence, which held that the obligee’s mere gratuitous forbearance from exercising its legal rights under the instrument of indebtedness does not create an agreement to extend |3the period of indebtedness. See Id. at 940 (citing Parker v. Guillot, 118 La. 223, 42 So. 782 (1907)). Similarly, an extension of the debt cannot be inferred from a mere forbearance to sue where the holder never expressly grants any extension of time. See Id. (citing Mutual National Bank v. Coco, 107 La. 268, 31 So. 628 (1902)).
The FDIC case is distinguishable from the issue before this court. In FDIC, the forbearance had not reached the level of equitable estoppel. LNB sent two letters to ICB stating that an event of default had occurred and declared the principal and accrued interest on tile notes were immediately due and payable. See id. at 929. The one letter sent by Mrs. Mesa to the Spurlocks did not deny that they bring the debt to a current status or that she would foreclose. The letter said, “Please pay at least one payment per month, if not more, so that this dept, [sic] can be retired.”
No payments had been made by ICB on the indebtedness. .The Spurlocks made all payments, albeit they were severely delinquent. Seven months after the letters from LNB, ICB was placed in receivership to the FDIC because of its unsound condition. At that time, LNB set off ICB deposits with LNB in order to partially recoup the amount owed on the note. The issue in FDIC was whether the dividends paid by ICB constituted default under the note agreement. The court found that the actions of ICB did constitute default. The Court found that the contract was modified absent an express agreement between LNB and ICB. The forbearance of LNB *658 did not extend the period of the indebtedness or waive the obligation: LNB could set off the debt by seizing the deposits of ICB held by LNB.
In the instant case, the Spurlocks are not claiming that the promissory note was modified such' that there was a waiver of the obligation or extension of the due date. The Spurlocks claim that Mrs. Mesa’s action reached the level of equitable estoppel so that she is barred from suddenly demanding strict performance. In addition, Mrs. Mesa claims that her forbearance did not result in modification of |4the promissory note. In Resolution Trust Corp. v. Murray, 935 F.2d 89, 96 (5th Cir.1991), the Court found under Louisiana law that a savings and loan did not consent to modification of the original notes by continuing to accept maker’s inadequate monthly payments. The holders of the notes brought suit to enforce the notes executed by the makers. The two notes each had a substantial balloon payment that had not been paid. While the Murrays had made several payments toward the debt, they failed to make the required balloon payments of the remaining balances and truly cure the defaults on the two notes. See id. at 95.
The holder filed suit on the two notes approximately three months after the maturity date of the later note had passed with no payment made by the Murrays on the substantial balance owed. See id. at 91. Before the suit was filed, the holders made written demand for the Murrays to pay the matured loans. The balanced owed by the Murrays was in excess of eight hundred thousand dollars, yet the Murrays contended that a proffered payment of $4,160 would have brought the loan current, but the holder returned-the payment as insufficient. See id. at- 95. The court states in a footnote, “[wjere we to construe this contention to mean that (the Holder) somehow modified the original contracts by accepting monthly payments after the maturity dates of the notes, we would nevertheless have to hold that Louisiana law does not support it.... The loans were already in default and demandable. While Louisiana law recognizes modification of written contracts by oral agreement or by the conduct of the parties in certain contexts (citation omitted),implication that the December bill is a modification, accompanied with the Mur-rays’ “impression” of the status of the loans, without more, is not sufficiently specific to raise a fact issue and defeat summary judgment.” Id. at 96.
This situation is. not analogous to the issue before this Court in the instant case. In Murray, the makers owed a substantial balance and the holders, after |snotifying the makers, refused to accept any payment other than the full amount due. Well after the loan matured, the Murrays continued to offer inadequate payment. If Mrs. Mesa had returned the payments made by the Spurlocks after the maturity of the note, demanding that the comply with the terms, this would be a situation analogous to the one in Mwiray. The Murray court addressed contract modification, not forbearance.
Mrs. Mesa’s action would constitute forbearance if she had notified the Spurlocks of her refusal to continue accepting inadequate payments, then returned the inadequate payments and sought legal redress to compel the payments owed. Between the Mesas and the Spurlocks there developed “a course of conduct, i.e., routine late payments without complaint or objection over an extended period of time sufficient to create a justifiable belief that it is of no moment.” Sternberg v. Mason 339 So.2d 373, 377 (La. Ct.App.1st Cir.1976). When such a course of conduct has developed, it is essential in the interest of fairness that the obligee make known to the obligor his intent to discontinue acceptance of late payments. Id.
The court in Sternberg discussed the doctrine of forbearance at length. The maker did not make payment on time. The holder’s attorney sent a demand letter in which it was indicated that the suit would be instituted because of continuing *659 delinquency. The maker them forwarded two payments to the holder, which were rejected; the holder declared that the entire balance was due. The trial court, relying upon Motor Liens v. Motion Picture Adver. Serv. Co., 164 La. 440, 114 So. 89 (1927), held that the holder was not barred from accelerating the note because of her repeated acceptance of late payments.
The Louisiana Second Circuit Court of Appeals overturned the decision of the trial court. The law applicable to situations such as the one before the \ (Sternberg court was set out with particularity in Rex Credit Co. v. Kirsch, 4 So.2d 797, 799 (La. Ct.App. 4th Cir.1941). See Sternberg, 339 So.2d at 376.
It thus appears there are two lines of cases, one holding that a stipulation providing for acceleration or for some other such harsh right is waived where the holder of the note, or an obligee in a contract, permits a departure front the strict provisions of the contract, and the other line of cases which does not seem to be in conflict, which holds that there is no waiver if the obligor or the maker of the note is put on notice in advance that the granting of such indulgences or delays will not be considered as a waiver of the right to insist upon the strict enforcement of the stipulation of the note or contract. See Id. citing Rex Credit
The fiurst line of cases emanates front the holding in Standard Brewing Co. v. Anderson, 121 La. 935, 46 So. 926 (1908), which stands generally for the proposition that where a series of installment payments are due and the payee customarily permits payments to be made after the date on which they are due, there is established a course of conduct whereby the payee, by acquiescence therein is deemed to have waived his right to demand than an acceleration clause be enforced without first placing the payor in default thereby signaling an end to such conduct. See id. The basis for such a rule is to prevent an obligee from lulling an obligor into a false sense of security by accepting late payments over an extended period of time, without demand for punctuality, and, then at a future date of his own choosing accelerate the entire balance due on the obligation when the “late” payment complained of fall within the same pattern. Id.
The court addressed the issue of contracts that contains a provision that failure to strictly and promptly enforce the conditions of the agreement shall not operate as a waiver to enforce the terms thereof at any time and without the necessity of demand or putting in default. The court declared that it did not view the jurisprudence as authority for the proposition that in each and every case where a contract contains such provision the conduct of the obligee is immaterial and that |7such obli-gee is immaterial and that such obligee is entitled to strict enforcement of an acceleration clause regardless of the circumstances. See id. at 377. Of course, an obligee is entitled to have the contract strictly complied with. But when there has developed a course of conduct sufficient to create a justifiable belief that it is of no moment, it is essential in the interest of fairness that the obligee make known to the obligor his intent to discontinue acceptance of late payments. See id.
The third case relied upon by the appellant is not applicable to the issue before this court. Society of Roman Catholic Church v. Interstate Fire & Cas. 126 F.3d 727 (5th Cir.1997), is lengthy opinion concerning insurance contracts, a completely separate laws. The Court discussed in detail the Louisiana regarding contract modification, but did not discuss forbearance or the effect of forbearance on a contract.
The issue and the fact pattern before this court is better addressed by applying the holding of Sternberg 339 So.2d at 373 and Fred H. Moran Construction Corp. v. Elnaggar, 441 So.2d 260 (La.App. 1st Cir. 1983). In Elnaggar, the court affirmed *660 the trial court decision that the creditor acquiesced in a course of conduct that tolerated routine late installment payments without complaint, that the creditor did not put the debtor on notice that no additional late payments would be accepted and that if payment, was not timely executory proceedings would be initiated. See id. at 263. The collection ledger shows the debtors monthly installment payments for ten month period; of these ten payments, three were made on time, five were less than five days late and two were ten or more days late. When the eleventh payment was three days late, the creditor chose not to accept it and sue for executory process on the mortgage note. The creditor may have been motivated to sue for executory process as the debtors had filed an action | Rin redhibition against him. Nonetheless, the court found that the mortgagor proved the affirmative defense of forbearance on the part of the mortgagee.
The situation before this court differs from the facts in Elnaggar and Sternberg in that Mrs. Mesa, after sending one complaint notice, received the rest of the payments according to the amortization schedule, and then instituted legal proceeding to collect additional interest because of the untimeliness of the payments. In Elnag-gar and Sternberg, the creditors weary of the delinquent behavior of the debtors, took legal action before the debt had been fully paid. The courts found that the creditors in Elnaggar and Sternberg were prevented by forbearance from lulling the obligor into a false sense of security by accepting late payments over an extended period of time and then at a future date accelerating the balance of security and waited until the entire original loan amount was paid before demanding compensation for the untimely payments. Mrs.Mesa tolerated the substandard performance of the Spurlocks without exercising her right to enforce the obligation, therefore implying that such conduct was sufficient. The forbearance reached the level of equitable estoppel so that she was barred from suddenly demanding, after many years, strict performance of the obligation.

CONCLUSION

Accordingly, I find no error in the trial court granting of Spurlocks’ motion for summary judgment. Therefore, I would affirm the trial court’s granting of summary judgment in favor of the Spurlock and affirm the denial of Mrs. Mesa’s motion for summary judgment.