FEDERAL DEPOSIT INSURANCE COR-
PORATION as Receiver of American
Bank & Trust and in its Corporate Ca-
pacity

v.

R. Ray ORRILL, Jr.

Civ. A. No. 90–3184.

United States District Court,
E.D. Louisiana.

Aug. 26, 1991.

Mary T. Joseph, Steen, Rubin, Baton
Rouge, La., for American Bank & Trust
Co.

Richard A. Curry, Shannan Sweeney
Rieger, Rubin, Curry, Colvin & Joseph, Ba-
ton Rouge, La., for Federal Deposit Ins.
Corp.

Robert Fernand Shearman, Orrill &
Shearman, New Orleans, La., for R. Ray
Orrill, Jr.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on motion of plaintiff, Federal Deposit Insurance Corporation as Receiver of American Bank and Trust and in its Corporate Capacity ("FDIC") for Summary Judgment on the complaint and the defendant, R. Ray Orrill, Jr.'s ("Orrill"), counterclaim.

The matter was set for oral hearing on Wednesday, August 21st, 1991, but was submitted on briefs without oral argument.

## I. UNDISPUTED FACTUAL BACKGROUND

On January 18, 1989, this suit was originally filed by American Bank and Trust Company ("AmBank") in the Nineteenth Judicial District Court of the State of Louisiana. The suit arose out of two variable interest rate promissory notes executed by Orrill payable to the order of AmBank. The first promissory note ("Note A"), dated May 18, 1983, was executed by Orrill in the amount of $133,875.00 plus interest at the prevailing commercial prime rate of interest of AmBank and 25% on both principal and interest for attorneys fees if turned over to an attorney for collection, and is payable on demand [1] to the order of AmBank.[2] Note A is secured by the pledge of 17,300 shares of stock of First Eastern Bank and Trust Company.[3] The second promissory note ("Note "B"), dated October 31, 1987, was executed by Orrill in the amount of $38,000.00 plus interest at the Prime Lending Rate of AmBank plus 1% and 25% as attorneys fees if turned over to an attorney for collection, and is payable to the order of AmBank in a single principal payment due on October 31, 1988 and interest due quarterly.[4] Note B is secured by the pledge of stock securing Note A and the pledge of an additional 4,730 shares of stock of First Eastern Bank and Trust Company.[5]

Note A is a demand note [6] and the payment due on Note B on October 31, 1988 was not timely or fully paid and no payments have been made on either note since that date. Therefore, as a matter of law both Note A and Note B are in default and are due and owing.

Note A is due and owing in the amount of $70,470.73 with interest through December 9, 1988 of $4,510.00, and with interest after December 9, 1988 of $23.17 per diem until paid plus 25% attorneys fees on both principal and interest and all costs of these proceedings.[7] Note B is due and owing in the amount of $32,571.43 with interest through December 9, 1988 of $1,422.30, and with interest after December 9, 1988 of $11.60 per diem until paid plus 25% attorneys fees and all costs of these proceedings.[8]

Orrill claimed several defenses to the plaintiffs claims based on side agreements between AmBank and himself. Orrill also filed a counterclaim against the plaintiff claiming that AmBank had embarked on a course of conduct designed to impair his creditworthiness and that AmBank is liable

---

**1.** The parties disagree on whether Note A was "due" and whether both notes were "in default." Note A, however, is a demand note, and "[a] cause of action against a maker ... accrues in the case of a demand instrument upon its date." La.Rev.Stat.Ann. § 10:3–122(1)(b) (West 1983). Therefore, Note A as a matter of law was "due" when AmBank filed suit. Additionally, although no formal demand was required prior to filing suit since the maker of a note may be put in default by filing suit for performance, La.Civ. Code art. 1991 (West 1987), AmBank made demand on Orrill for payment on both notes on December 1, 1988. Plaintiff's Affidavit of Mary Terrell Joseph and attached letter.

**2.** Note A, Plaintiff's Exhibit 1.

**3.** Collateral Pledge Agreement, Plaintiff's Exhibit 3.

**4.** Note B, Plaintiff's Exhibit 2.

**5.** Collateral Pledge Agreement, Plaintiff's Exhibit 4.

**6.** Although the FDIC states that a payment was due on Note A on August 18, 1988 and was not timely paid, whether a payment was actually due on that date is immaterial because Note A is a demand note. See, supra note 1.

**7.** Affidavit of L.B. Fargerson, Plaintiff's Exhibit A.

**8.** Id.

to him due to its breach of the agreements, breach of its fiduciary duty, and its misrepresentations. Orrill states in his answers to interrogatories and response to request for production of documents that he is not in the possession of any documents to support his defenses or counterclaim.[9] AmBank denied that there had been a breach of any agreement.

AmBank was closed on August 2, 1990 and the Federal Deposit Insurance Corporation was appointed receiver and liquidator. The FDIC, in its corporate capacity ("FDIC Corporate"), acquired from the FDIC, in its receivership capacity ("FDIC Receiver"), certain assets of AmBank, including the notes at issue in this action. FDIC Receiver, however, retained the defense of the counterclaim. On September 4, 1990, the FDIC removed this action to this Court and on September 5, 1990 the FDIC was substituted as a party in both its corporate and receivership capacities. Subsequently, the original answer to the counterclaim was amended and FDIC Receiver asserted the defenses of 12 U.S.C. § 1823(e), federal common law, and the doctrine of *D'Oench, Duhme* as a complete and total bar to the counterclaim.

## II. THE LAW

### A. The *D'Oench, Duhme* Doctrine

█ Although the defendant has made several defenses involving oral side agreements between AmBank and himself he is estopped from using them because of the *D'Oench, Duhme* doctrine. The doctrine, based on *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), is "a common law rule of estoppel precluding a borrower from asserting against the FDIC defenses based upon secret or unrecorded 'side agreements' that alter[ ] the terms of

facially unqualified obligations." *Bell & Murphy & Assoc. v. Interfirst Bank Gateway, N.A.*, 894 F.2d 750, 753 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). The result in *D'Oench, Duhme* has been "codified" by Congress in 12 U.S.C. section 1823(e) (1989).[10] Although they are both generally construed in tandem, they both remain separate and independent grounds for decision. *Reding v. Federal Deposit Ins. Corp.*, 942 F.2d 1254 (8th Cir.1991). This is also true here.

Recently, the Fifth Circuit stated that *"D'Oench, Duhme* immunizes the FDIC from defenses asserted against it based upon agreements not firmly established in the financial institution's record." *Resolution Trust Corp. v. Murray*, 935 F.2d 89, 93 (5th Cir.1991). Therefore, Orrill's defenses based on oral side agreements are barred by both the *D'Oench, Duhme* doctrine and section 1823(e).

### B. Federal Holder in Due Course Status

The parties disagree on whether the FDIC is entitled to holder in due course status which would bar the defendant from asserting personal defenses against the FDIC.

█ Orrill claims that since the FDIC took possession of the notes after this litigation was already pending, it had actual knowledge of the personal defenses, and thus can not be a holder in due course. A holder in due course takes an instrument for value, in good faith, and without notice of any defense against it or claims to it.[11] In other cases the FDIC, having acquired the assets of a bank after litigation involving a note was already pending, has been substituted as a party and been given holder in due course status. *Federal Savings and Loan Ins. Corp. v. Griffin*, 935 F.2d

---

9. Defendant's Answers to Interrogatories 3(e), 8(e) and 9, Plaintiff's Exhibit C. Defendant's Response to Request for Production of Documents 2, 3 and 5, Plaintiff's Exhibit C.

10. The Fifth Circuit has noted that "[t]here has been much discussion on the issue of whether § 1823(e) truly codifies the *D'Oench, Duhme*

doctrine, is more limited, or goes further. *Resolution Trust Corp. v. Murray*, 935 F.2d 89, 93 n. 3 (5th Cir.1991) (citations omitted). In the case, the Court found that both *D'Oench, Duhme* and § 1823(e) both applied; therefore, it found no need to resolve the controversy. *Id.*

11. La.Rev.Stat.Ann. § 10:3–302(1) (West 1983).

691 (5th Cir.1991); *Federal Savings and Loan Ins. Corp. v. Cribbs*, 918 F.2d 557 (5th Cir.1990); *Campbell Leasing, Inc. v. Federal Deposit Ins. Corp.*, 901 F.2d 1244 (5th Cir.1990); *Federal Deposit Ins. Corp. v. Langley*, 792 F.2d 541 (5th Cir.1986), *aff'd*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). The reason for this is that "the FDIC and subsequent note holders enjoy holder in due course status whether or not they satisfy the technical requirements of state law." *Federal Deposit Ins. Corp. v. Wood*, 758 F.2d 156, 158 (6th Cir.), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985); *Campbell Leasing*, 901 F.2d at 1249. Additionally, the FDIC receives holder in due course status under the *D'Oench, Duhme* doctrine. *Bell & Murphy*, 894 F.2d at 754; *Federal Savings and Loan Ins. Corp. v. Murray*, 853 F.2d 1251, 1256 (5th Cir.1988).

Thus, the FDIC is a holder in due course and Orrill, as the maker of the promissory notes, is barred from asserting "personal" defenses against the FDIC such as the oral side agreements.[12]

### C. *The FDIC's Ownership of the Notes*

■ Orrill argues that the FDIC has not proved its ownership of the notes. However, the affidavit by the FDIC's agent states that the FDIC is the receiver of AmBank and holds physical possession of the promissory notes and the pledge agreements and pledged items executed by the defendant.[13] Also, the affidavit by the staff attorney of the FDIC states that the FDIC has vested title to all assets of Am-Bank with full and exclusive management and control.[14] Therefore, the FDIC has proven its ownership of the notes.

### D. *The Purchase of Litigious Rights*

■ Orrill also argues that the FDIC has "purchased" a lawsuit and that the defendant is entitled, under article 2652 of the Louisiana Civil Code[15], to have himself released by paying the purchase price and that he is unable to determine the amount to be tendered to be released. Even if the FDIC did "purchase" a lawsuit the amount due on the notes has been calculated.[16] The FDIC, however, has not purchased the notes. The Fifth Circuit has recognized that: "[F]ederal courts have in a related context approved regulatory authorities' transfers of rights held by failed banking that would not have been transferrable under state law." *NCNB Texas Nat'l Bank v. Cowden*, 895 F.2d 1488, 1499 (5th Cir. 1990). Therefore, article 2652 is inapplicable to this case.

### E. *The Counterclaim*

■ The counterclaim against the FDIC Receiver is also based on the oral side agreements. The *D'Oench, Duhme* doctrine, however, "bars the use of unrecorded agreements between the borrower and the bank as the basis for defenses or claims against the FDIC." *Bowen v. Federal Deposit Ins. Corp.*, 915 F.2d 1013, 1016 (5th Cir.1990). Recently, the Fifth Circuit, affirmed a district court's granting of summary judgment against the guarantors of several notes which, based on the *D'Oench, Duhme* doctrine, barred their claims of unconscionability, breach of good faith, and breach of fiduciary duty because the claims would have required evidence outside of the bank's files. *Clay v. Federal Deposit Ins. Corp.*, 934 F.2d 69, 72–73 (5th Cir. 1991). This Court is faced with similar claims and finds that the *D'Oench, Duhme* doctrine bars Orrill's claims.

---

**12.** Since the *D'Oench, Duhme* doctrine applies, however, the FDIC's holder in due course status merely gives added support to barring Orrill's use of the oral side agreements.

**13.** Affidavit of L.B. Fargerson, Plaintiff's Exhibit A.

**14.** Plaintiff's Affidavit of John Marshall Miller. The FDIC attached to the affidavit, as Exhibit "A," the Order of the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana, which vested the FDIC with the assets of AmBank on August 2, 1990.

**15.** "He against whom a litigious right has been transferred, may get himself released by paying to the transferee the real price of the transfer, together with the interest from its date." La. Civ.Code Ann. art. 2652 (West 1952).

**16.** *Supra*, notes 7 & 8 and accompanying text.

Additionally, 12 U.S.C. § 1823(e) applies to the FDIC in its receivership capacity.[17] Therefore, because section 1821(d)(9)(A) prohibits claims against the FDIC, in its corporate and receivership capacity, which do not comply with section 1823(e),[18] Orrill's counterclaim, which is based on the oral side agreements, is also barred by section 1823.[19]

Therefore, Orrill is unsuccessful in his attempt to escape the dungeon of *Duhme*.[20]

Accordingly, and for all of the aforesaid reasons,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment on the Complaint and the Defendant's Counterclaim is hereby GRANTED;

IT IS FURTHER ORDERED that Note A is due and owing in the amount of $70,-470.73 with interest through December 9, 1988 of $4,510.00, and with interest after December 9, 1988 of $23.17 per diem until paid plus 25% attorneys fees on both principal and interest and all costs of these proceedings;

IT IS FURTHER ORDERED that Note B is due and owing in the amount of $32,-571.43 with interest through December 9, 1988 of $1,422.30, and with interest after December 9, 1988 of $11.60 per diem until paid plus 25% attorneys fees and all costs of these proceedings.

The Clerk of Court is directed to enter judgment in accordance herewith.

---

**17.** Section 1823(e) was amended in 1989 and now extends the statutory protection to FDIC Receiver. Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, § 217, 103 Stat. 183, 187 (1989).

**18.** "[A]ny agreement which does not meet the requirements set forth in section 1823(e) of this title shall not for the basis of, or substantially comprise, a claim against the receiver of the Corporation." 12 U.S.C. § 1821(d)(9)(A) (1989).

**19.** In his memorandum in opposition, Orrill did not oppose the FDIC's motion for summary judgment on the counterclaim. Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment.

**20.** *Bowen,* 915 F.2d at 1016.