637 So.2d 604 (1994)
PEOPLES HOMESTEAD FEDERAL BANK AND TRUST, Plaintiff-Appellee,
v.
Fred O. LAING, Sr., Individually and d/b/a Laing Farms, Defendant-Appellant.
No. 25784-CA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1994.
*605 Fewell, Rhymes & Lucas by Richard L. Fewell, Jr., Monroe, for defendant-appellant.
Snellings, Breard, Sartor, Inabnett & Trascher, by W. Brooks Watson, Monroe, for plaintiff-appellee.
Before HIGHTOWER and WILLIAMS, JJ., and LOWE, J. Pro Tem.
HIGHTOWER, Judge.
In this suit on a promissory note, Fred O. Laing, Sr., individually and d/b/a Laing Farms, appeals from adverse rulings granting a motion to strike and summary judgment. We affirm.

PROCEDURAL HISTORY
On November 16, 1988, People's Homestead Federal Bank for Savings filed suit against Laing, seeking to recover the amount due on a 1987 promissory note, together with interest and attorney's fees. In his answer, Laing did not dispute his signature on the instrument but, instead, asserted failure of consideration. Subsequently, the trial court granted the bank's motion for summary judgment and defendant appealed. Concluding that Louisiana's parol evidence rule would not exclude presentation of the indicated defense, we reversed and remanded for further proceedings. See People's Homestead Bank v. Laing, 569 So.2d 271 (La.App. 2d Cir.1990). During the pendency of that appeal, however, People's became insolvent and the receiver, Resolution Trust Corporation ("RTC"), upon appropriate motion, substituted itself as party plaintiff.
Subsequently, the case remained dormant for almost two years. Then, on August 4, 1992, Dennis Joslin, who had acquired the note in question from the RTC through notarial endorsement and transfer, substituted himself as plaintiff. Answering the amended petition, Laing specifically requested to reserve his right of litigious redemption pursuant to LSA-C.C. Art. 2652, "inasmuch as Petitioner herein acquired the disputed note from the Resolution Trust Corporation (RTC)." Joslin responded by moving to have this portion of the defense stricken from the pleadings, and the trial court granted that request. Soon thereafter, plaintiff obtained a summary judgment recognizing defendant's debt of $53,874.40, plus interest and attorney's fees, and maintaining Joslin's attendant privileges and mortgages on certain property. This appeal, challenging both rulings, ensued.

DISCUSSION

Motion to Strike
Appellant initially contends that the trial court erred in striking the litigious redemption assertion from his answer. The provisions of LSA-C.C.P. Art. 964 authorize a court, on motion of a party or sua sponte, to order stricken any insufficient demand or defense or any redundant, immaterial, impertinent, or scandalous matter. In his motion to strike, Joslin contended that a defendant cannot claim the benefit of LSA-C.C. Art. 2652, the litigious redemption doctrine, against the RTC or its assignees. We agree.
Although, with certain exceptions (see, e.g., LSA-C.C. Art. 2447), Louisiana law allows the sale of litigious rights, speculation in litigation is discouraged by LSA-C.C. Art. 2652:
He against whom a litigious right has been transferred, may get himself released by paying to the transferee the real price of the transfer, together with interest from its date.
*606 Removing the profit incentive in such transactions serves to dissuade trafficking in lawsuits. Smith v. Cook, 189 La. 632, 180 So. 469 (1938). However, an asset transferred to a regulatory agency, such as the RTC, does not fit the prototype at which this codal provision is aimed.
In its position as a receiver, the RTC acquired Laing's promissory note as a part of an effort to protect the creditors and depositors of the failing institution. Because the Federal Savings & Loan Insurance Corporation insured these deposits, the endeavor for conservation also extended to those monies contributed to that governmental corporation by other member thrifts and, ultimately, the taxpayers. Transfer transactions, such as the one which occurred when People's became insolvent, allow financial regulators to gain control of a faltering bank expeditiously, with no service interruption and minimized depositor losses. See FDIC v. Wood, 758 F.2d 156, 160-61 (6th Cir.1985), cert. denied, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985). Speed is required in such a transaction. Id. For that reason, bulk transfers and the ability of federal agencies to estimate the value of a thrift's assets, simply by analyzing its books and records, are often essential elements in saving a distressed institution. See Id.; FSLIC v. Murray, 853 F.2d 1251, 1256 (5th Cir.1988).
Subjecting the RTC or its assignees to the litigious redemption doctrine would wreak havoc with the agency's ability to perform its statutorily mandated function of managing failed thrifts. In any purchase transaction, the agency would be faced with assigning a value to each and every pending suit on a note. Not only would these measures retard the intervention, but also produce an unjustified windfall to the defaulting borrowers and a consequential loss to either the thrift's depositors, other creditors, or the taxpayers.
More concisely stated, while LSA-C.C. Art. 2652 is a legislative attempt to prohibit trafficking in litigation, profit did not motivate the RTC's acquisition in the instant matter. Hence, the sale of litigious rights rule should not be applied to thwart the useful and expeditious method by which thrift regulators intervene in failing institutions. Indeed, in FDIC v. Orrill, 771 F.Supp. 777 (E.D.La.1991), aff'd, 978 F.2d 711 (5th Cir.1992), a federal district court specifically determined that a defendant borrower could not invoke the LSA-C.C. Art. 2652 concept against notes acquired by the Federal Deposit Insurance Corporation. Citing NCNB Texas Nat'l Bank v. Cowden, 895 F.2d 1488 (5th Cir.1990), the Orrill court recognized that federal regulatory agencies may obtain and transfer rights acquired from failed banking institutions, notwithstanding that such rights would not have been transferrable under state law.
Here, of course, we are not directly concerned with the federal agency but with an individual who has acquired the note at issue from that authority. However, under former LSA-R.S. 10:3-201 (now LSA-R.S. 10:3-203), the transfer of an instrument vests in a transferee, like Joslin, such rights as the transferor previously held. Therefore, an assertion based upon LSA-C.C. Art. 2652 cannot prevail against an assignee of the RTC. In managing failed banks, and rather than directly incurring the costs of prosecuting each delinquent account, the RTC sells obligations in bulk without assigning a specific monetary value to separate items. In doing that, to ensure that its protective goals are advanced, the agency must be able to convey its rights along with any promissory notes. Otherwise, the market for such assets would be substantially restricted, producing a deleterious effect in regard to the conservation of faltering institutions. Cf. Porras v. Petroplex Sav. Ass'n., 903 F.2d 379 (5th Cir. 1990). Thus, both policy considerations and our commercial law dictate that Joslin, in addition to the RTC, be insulated from the litigious redemption doctrine. See also, e.g., FDIC v. Bledsoe, 989 F.2d 805, 811 (5th Cir.1993) (explaining how the imposition of state statutes of limitations upon assignees would undermine the ability of federal agencies to protect bank assets). Accordingly, the trial court correctly ordered the indicated passages stricken from Laing's answer.[1]

*607 Motion for Summary Judgment

Appellant also assigns error in reference to the granting of Joslin's motion for summary judgment. Laing contested the note on two grounds: litigious redemption and failure of consideration. Our previous discussion having resolved the former matter, we are left with only the latter aspect.
Laing has consistently alleged that he signed the promissory note at issue in exchange for an assurance by People's that it would make crop loans to his sons, but that the bank thereafter refused to extend the promised credit. However, in his brief, appellant correctly concedes that lack of consideration and other defenses based upon alleged side agreements are barred by the D'Oench, Duhme doctrine (n. 1, supra). Clearly, assignees of federal regulatory agencies enjoy such protections, see Bell & Murphy & Assoc. v. Interfirst Bank Gateway, 894 F.2d 750 (5th Cir.1990), cert. denied, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990), which shield against averred commitments to finance future loans when not evidenced in the bank's records, see Beighley v. FDIC, 868 F.2d 776 (5th Cir.1989). Very importantly, too, appellant has not briefed the summary judgment issue, and any specification or assignment of error not briefed is considered abandoned. URCA 2-12.4; Day v. South Line Equipment Co., 551 So.2d 774 (La.App. 1st Cir.1989), writ denied, 553 So.2d 474 (La.1989).

CONCLUSION
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] We do not find it necessary to agree or disagree with appellant's argument that his litigious redemption claim is barred by neither the D'Oench, Duhme nor the federal holder in due course principles. The former concept emanates from D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and is a common law rule of estoppel precluding a borrower from asserting against a federal regulatory agency defenses based upon secret or unrecorded side agreements which alter the facially unqualified obligation. The federal holder in due course doctrine gives those same agencies immunity from a debtor's personal defenses.